D. S. PLEAK, Appellee, v. MARKS & SHIELDS, Appellants.

VENUE: Pottawattamie County—Avoca and Council Bluffs District
1 —Office or Agency. An action may properly be brought in the Avoca district of Pottawattamie county against a resident of Council Bluffs in said county, when the action grew out of or was connected with an agency maintained by defendant at Avoca, irrespective of the question whether such two districts are the equivalent of two counties. (Sec. 3500, Code.)

ATTACHMENT: Pottawattamie County—Place of Levy—Removal
2 of Property from "County." The sheriff of Pottawattamie

county may legally serve a writ of attachment in any part of said county, whether the action is commenced at Avoca or Council Bluffs. Service held proper for the additional reason that the property was removed from the Avoca district to the Council Bluffs district after the sheriff received the writ and was pursued and seized by the sheriff "within 24 hours" thereafter. (Sec. 3893, Code.)

**VERDICT:** Directed Verdict—When Inevitable. When the record shows without dispute (a) the price defendant agreed to pay for the property, (b) delivery, (c) an attempted rescission by defendant and an abandonment of the attempt, and (d) the withdrawal by defendant of all his counterclaims, a directed verdict is inevitable.

*Appeal from Pottawattamie District Court at Avoca.*—HON. J. B. ROCKAFELLOW, Judge.

SATURDAY, APRIL 10, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

ACTION at law, aided by an attachment, to recover the agreed price of certain personal property sold by plaintiff to the defendants. Motions for change of venue and for discharge of the attached property were filed and overruled. An answer including a counterclaim was filed. At the close of the evidence, the counterclaim was withdrawn without prejudice. The trial court thereupon directed a verdict for the plaintiff. The defendants appeal.—*Affirmed.*

*George B. Clark* and *Preston & Dillinger,* for appellee.

*F. A. Turner* and *Mayne & Green,* for appellants.

EVANS, J.—The defendants, Marks & Shields, constituted a partnership. The members of the partnership resided in Council Bluffs. The partnership was engaged in the business of buying and selling horses and mules. On Saturday, January 4, 1913, Marks bought from the plaintiff for the partnership a span of horses and a span of mules for a lump sum of $662.50, and delivered the check of the partnership

therefor.   These animals were left in the possession of the plaintiff, who was to deliver them within a day or two at the livery barn of N. S. Gray at Oakland.   They were thus delivered on the following day and were received for the partnership by N. S. Gray.   Within an hour after their delivery, one of the mules was choked to death by his halter.   The loss of this animal created the controversy, further details of which will be later set forth in the discussion of the questions presented for our consideration.

I. Appellants complain of the ruling denying the application for a change of venue.   This action was begun in the district court of Pottawattamie county at Avoca.   The members of the partnership resided at Council Bluffs in the same county.   This county has two county seats, Council Bluffs and Avoca.   The district court of the county is held at each county seat.   The same court officials officiate at each county seat with the aid of a local deputy clerk and deputy sheriff.   This situation was created by Ch. 198 of the Acts of the Twentieth General Assembly.   Sec 3 of such act was as follows:

1. VENUE: Pottawattamie county: Avoca and Council Bluffs district: office or agency.

"That from and after the first day of January, A. D. 1886, the said circuit court to be held at Avoca shall have original and exclusive jurisdiction as now provided by Sec. 162 of the Code of Iowa of 1873, or as may be hereafter provided by law regulating the jurisdiction of said court of all civil cases including appeals and writs of error from inferior courts and other tribunals and guardianship and probate matters arising in the territory in said Pottawattamie county east of the west line of range forty."

The dividing line separating the venues of the two branches is the west line of range forty.   The property in question was purchased in the Avoca division.   The town of Oakland, where the delivery was made, is in the division of Avoca.   Because the members of the partnership resided at

Council Bluffs, it is contended that the action should have been brought in the Council Bluffs division. The argument is that the two divisions are the equivalent of two counties and that the bringing of the action in the Avoca division was equivalent to bringing it in the wrong county. Except as above set forth, the statute creating the Avoca division is silent on such question. Under the general statutes, it is true that the actual residents of Council Bluffs would not be required to defend personal actions against them in any other county than Pottawattamie. This action was brought against them in Pottawattamie county, so that the literal require ments of the statute in that respect were complied with. What remedy is open to a defendant resident of Council Bluffs if an action be wrongfully commenced in the Avoca district is not clear. Upon the record before us, we do not find it necessary to pass upon it. The transaction out of which this suit arose occurred wholly in the Avoca district. Granting, for the sake of the argument, that this fact would not of itself fix the venue of the action in the Avoca dis trict, it was made to appear that the defendant partnership was engaged in the business of buying horses in the Avoca district and that they used the livery stable of N. S. Gray as a place and agency for the transaction of such business, in that all the horses purchased in that vicinity were to be there delivered, and that N. S. Gray acted as agent in re ceiving such delivery. In pursuance of the contract of pur chase, the plaintiff delivered his animals at such place and to Gray, who received them on behalf of Marks & Shields. The agency of Gray was doubtless a very limited one, but it was an agency, within the meaning of Code Sec. 3500. Such section is as follows:

"When a corporation, company or individual has an office or agency in any county for the transaction of busi ness, any actions growing out of or connected with the busi ness of that office or agency may be brought in the county where such office or agency is located."

If, therefore, these two divisions should be deemed the equivalent of two counties, these facts justified the bringing of the action in the Avoca district, under the terms of the foregoing statute. There was no error, therefore, in denying the application for a change.

II. Defendants moved for a discharge of the attached property on the ground that the attachment was served in the Council Bluffs district and not in the Avoca district.

2. ATTACHMENT: Pottawattamie county: place of levy: removal of property from "county."

In consideration of this motion, the facts appearing were that the writ of attachment was sued out on Tuesday morning and placed in the hands of the sheriff between 9:30 and 10:00 A. M. On the same morning, the defendants started the attached property from Oakland in the Avoca district to Council Bluffs. They were overtaken at about 4:00 P. M. at the town of Treynor, which is on the Council Bluffs side of the line, and the writ was then and there executed. The argument is again that the officer who had authority to serve a writ of attachment in the Avoca district could have no authority to serve it in the Council Bluffs district. If we were dealing with two counties, a writ of attachment directed to the sheriff of one county could not ordinarily be served by such officer outside the boundaries of the county. The writ issued in this case is not contained in the record. Presumably it was directed to the sheriff of Pottawattamie county. Such would be the requirement of the statute. Pottawattamie county has but one sheriff, though he may act through deputies. In such cases, the official act of the deputy is necessarily the official act of the sheriff. The clerk could have issued writs to different counties. But we can conceive of no reason why he should issue more than one writ to the sheriff of Pottawattamie county. If the sheriff of Pottawattamie county could not serve the writ in the Council Bluffs district, who could?

There is a further reason quite controlling in this case. The evidence was sufficient to justify the court in finding

that the attached property was within the Avoca district when the writ of attachment came into the hands of the officer. Under Code Sec. 3893, such official was authorized to "pursue and attach the same in an adjoining county within twenty-four hours after removal." There was no error, therefore, in denying the motion to discharge the attachment.

III. The answer of the defendants was a general denial and a plea of a rescission of the contract of purchase. A counterclaim also was filed. One count thereof claimed damages for wrongful issue of the attachment. The other count claimed damages for alleged negligence of the plaintiff, which resulted in the loss of the animal in question. At the close of the evidence, the entire counterclaim was withdrawn, and we may ignore the testimony given in support thereof. We have only to do, therefore, with the question of whether, upon the record, the defendants were entitled to go to the jury. There was no dispute as to the amount of the purchase price or as to the fact of delivery. There was a claim by the defendants that the delivery should not have been made before Monday, the 6th. But this was material only as bearing upon the counterclaim. After the loss of the animal, the defendants declared a rescission of the contract upon the ground that the loss was occasioned through the fault of the plaintiff and through breach of his contract for delivery. They sent the other three animals forthwith to the farm of the plaintiff, who refused to receive them. The defendants therefore took them back to the livery stable and, on the following day, started them for the market at Omaha. The defendants pleaded as a defense the rescission of the contract and return of the living animals. No material fact is in dispute even at this point. It is argued for plaintiff that the contract was indivisible and that, because defendants disposed of the carcass of the dead animal, they therefore could not rescind by returning the three living animals. Our impressions are not favorable to this line of argument. If the defendants were entitled to rescind, it would

3. VERDICT: directed verdict when inevitable.

be on the theory that the death of the animal resulted through the fault of the plaintiff in the delivery. We can hardly think that the defendants were required to carry this putrefying carcass to the plaintiff in order to save their legal rights. The public would have some rights at this point. If the carcass had any money value, the defendants would doubtless owe a commensurate duty to protect the plaintiff to the extent of such value. It is doubtful, also, whether the defendants were under the necessity of returning the property to the farm of the plaintiff as a condition of rescission. The livery stable was agreed upon at the time of the purchase as the place of delivery and the property was actually delivered there. So far, therefore, as the declaration of rescission and the return of the property thereunder are concerned, we are disposed to think that they would have been sufficient, provided, of course, that it be found that the defendants were legally entitled to rescind; and provided further that they had stood upon their rescission.

But the defendants did not stand upon their rescission. Upon the refusal of the plaintiff to receive the property, the defendants proceeded to put the same upon the market. They were sold in due course upon the Omaha market. The defendants did not in their answer keep their tender good. Their answer contained no tender whatever. We will assume that they were not bound under all circumstances to keep the property for the purpose of keeping their tender good. The circumstances might warrant their disposal of it. Even then they would be required to dispose of it for the benefit of the plaintiff, if they proposed to keep their tender good. The answer in this case pleaded only the rescission and the offer to return. It contained no suggestion of present tender either of the property or of its proceeds. The defendants, therefore, are in the position of having abandoned their tender of return and of having fully appropriated the property to their own use. Apart from the counterclaims and the general denial, the answer presented no defense. The general denial

was fully overcome by the conceded facts. The counterclaim was withdrawn. There was nothing left for the jury and the trial court properly directed a verdict. Its order is, therefore,—*Affirmed.*

DEEMER, C. J., LADD and GAYNOR, JJ., concur.