State of Iowa ex rel. Joe W. True, Appellee, v. City of Council Bluffs et al., Appellants.

No. 45790.

October 14, 1941.

White & Bruner and White & White, for appellee.

Wright & Kistle, for appellants.

Proctor Perkins, for the City of Council Bluffs.

Tinley, Mitchell, Ross, Everest & Geiser, F. E. Northrop, Kimball, Peterson, Smith & Peterson, H. L. Cherniss, H. B. Finerty, J. L. Connolly, Lynn S. Alberti, Geo. H. Mayne II, Oscar E. Johnson, and P. C. Rasmussen, appearing as amici curiae.

Mitchell, J.—Joe W. True, a resident of Pottawattamie county, Iowa, commenced this action in equity, in the name of

the State of Iowa upon relation of Joe W. True. It was brought under chapter 79 of the 1939 Code of Iowa, which provides for an enforcement of the penal laws by equitable proceedings.

The petition alleges, that the City of Council Bluffs owns and holds title, within its corporate limits to a certain tract of real estate known as "Dodge Park". That said tract, which is described is at the present time being used for the purpose of "pool selling or pari-mutuel betting", which is a form of gambling, it is alleged.

That all of the defendants except the City of Council Bluffs for some time past have been recording or registering bets or wagers or selling pools upon the result of a trial or contest of the skill, speed or power of endurance of racing dogs.

That the operation and maintenance of such nuisance is a matter of common knowledge, and that unless enjoined, the defendants will continue the maintenance of the nuisance. To this petition the defendants filed a special appearance, one on behalf of Syms and Lansky, the operators of the park, and another on behalf of the City of Council Bluffs. As the material parts of the special appearances will be later referred to, it is not necessary to set them out in detail.

There was a trial, in which evidence was taken on the issues raised by the special appearance, and the lower court held that Joe W. True had a right to maintain the action under and by virtue of chapter 79 of the Code of Iowa 1939. That the original notice served in this cause was returnable on the 30th day of September, while the term of court started on the 2d day of September. That the original notice was defective, and by reason thereof the court had no jurisdiction of the persons. From the adverse ruling holding that Joe W. True, a resident of that part of Pottawattamie county east of the west line of range 40, could maintain the action and invoke the jurisdiction of the court. The defendants Syms and Lansky appeal. The City of Council Bluffs has not appealed.

This record does not show the exact manner in which the alleged "betting and pooling", as it is referred to, is carried on. It is claimed there are maintained in this public park in the City of Council Bluffs, dog races where men and women gather and wager upon the skill or endurance of their favorite dog. That

the wagering, it is alleged, is done by "pooling". Just exactly what this is, is not set out in the record and is unknown to the writer of this opinion. We are not, however, now confronted with this problem, for this case is not here on its merits, and we do not therefore pass upon the question of whether or not a nuisance as alleged was maintained. The sole question before us is whether or not the lower court erred in its ruling on the special appearance.

This action was commenced under Code section 1588 of chapter 79 of the 1939 Code, the material part of which is as follows:

"1588  Injunction—procedure.  When a nuisance is kept, maintained, or exists, as defined in this chapter, the county attorney, or any citizen of the county, or any society, association, or body incorporated under the laws of this state, may maintain an action in equity in the name of the state of Iowa * * *."

It is argued that because Joe W. True is a resident of Avoca, Iowa, and that Avoca is in the Avoca division of the District Court of Pottawattamie county, and that Dodge Park is in the Council Bluffs district of the Pottawattamie County District Court, that True is not a "citizen of the county" within the meaning of the above-quoted statute and is not authorized to commence this action.

No difficulty would arise in the mind of the court or of any lawyer as to the respective meanings both in relation to who might bring actions or where they might be brought except for the fact that Pottawattamie county is divided into two districts or divisions of the District Court of Iowa in and for Pottawattamie county. This was done by legislative enactment.

Appellant contends that under Code section 1588, appellee could not commence this action as he was not a citizen of the Council Bluffs District of the Pottawattamie District Court. They cite and rely mainly upon the case of Slutts v. Dana, 134 Iowa 244, 115 N. W. 1115, Pleak v. Marks & Shields, 171 Iowa 551, 152 N. W. 63, and Gumbert v. Sheehan, 200 Iowa 1310, 206 N. W. 604.

We have no fault to find with these cases. In the case of

Pleak v. Marks & Shields, 171 Iowa 551, 553, 152 N. W. 63, this court said, we quote:

"Appellants complain of the ruling denying the application for a change of venue. This action was begun in the district court of Pottawattamie county at Avoca. The members of the partnership resided at Council Bluffs in the same county. This county has two county seats, Council Bluffs and Avoca. The district court of the county is held at each county seat. The same court officials officiate at each county seat with the aid of a local deputy clerk and deputy sheriff. This situation was created by Ch. 198 of the Acts of the Twentieth General Assembly. Sec. 3 of such act was as follows:

" 'That from and after the first day of January, A. D. 1886, the said circuit court to be held at Avoca shall have original and exclusive jurisdiction as now provided by Sec. 162 of the Code of Iowa of 1873, or as may be hereafter provided by law regulating the jurisdiction of said court of all civil cases including appeals and writs of error from inferior courts and other tribunals and guardianship and probate matters arising in the territory in said Pottawattamie county east of the west line of range forty.'

"The dividing line separating the venues of the two branches is the west line of range forty. The property in question was purchased in the Avoca division. The town of Oakland, where the delivery was made, is in the division of Avoca. Because the members of the partnership resided at Council Bluffs, it is contended that the action should have been brought in the Council Bluffs division. The argument is that the two divisions are the equivalent of two counties and that the bringing of the action in the Avoca division was equivalent to bringing it in the wrong county. Except as above set forth, the statute creating the Avoca division is silent on such question. Under the general statutes, it is true that the actual residents of Council Bluffs would not be required to defend personal actions against them in any other county than Pottawattamie. This action was brought against them in Pottawattamie county, so that the literal requirements of the statute in that respect were complied with. What remedy is open to a defendant resident of Council Bluffs if an action be wrongfully commenced in the Avoca dis-

trict is not clear. Upon the record before us, we do not find it necessary to pass upon it. The transaction out of which this suit arose occurred wholly in the Avoca district. Granting, for the sake of the argument, that this fact would not of itself fix the venue of the action in the Avoca district, it was made to appear that the defendant partnership was engaged in the business of buying horses in the Avoca district and that they used the livery stable of N. S. Gray as a place and agency for the transaction of such business, in that all the horses purchased in that vicinity were to be there delivered, and that N. S. Gray acted as agent in receiving such delivery. In pursuance of the contract of purchase, the plaintiff delivered his animals at such place and to Gray, who received them on behalf of Marks & Shields. The agency of Gray was doubtless a very limited one, but it was an agency, within the meaning of Code Sec. 3500. Such section is as follows:

" 'When a corporation, company or individual has an office or agency in any county for the transaction of business, any actions growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located.'

"If, therefore, these two divisions should be deemed the equivalent of two counties, these facts justified the bringing of the action in the Avoca district, under the terms of the foregoing statute. There was no error, therefore, in denying the application for a change."

It will be noted that in the above-quoted case, the court said, "If, therefore, these two divisions should be deemed the equivalent of two counties", it did not say that each division was a separate county.

The problem which confronts us, is whether or not when the General Assembly drafted and passed section 1588, writing therein, that "any citizen of the county" could commence the action, that it intended that in Pottawattamie county, the citizen had to be a resident not only of Pottawattamie county, but also of the Council Bluffs district of the Pottawattamie District Court of Iowa.

In the construing of statutes, courts seek to ascertain the

intention that existed in the legislative mind when the statute was enacted. When it said "any citizen of the county", what did it mean by the word "county"? Reading the cases we agree with appellants, when in their brief they say:

"We recognize the fact and urge it upon the Court that the word 'county' is a word of varied and different meanings. What is a word has been judicially defined by Justice Holmes in construing the original act of the Congress of the United States in relation to citizenship and under the original naturalization law of 1789. Justice Holmes said: 'A word is not a crystal, transparent and unchanged, but is the skin of a living thought and may vary in color and content according to the circumstances and the time in which it is used.' "

Pottawattamie county has only one set of county officers, they are elected by all of the citizens living in Pottawattamie county, both in the eastern and western portions thereof. That the Avoca court is administered by Pottawattamie county officers, deputies of the duly elected county officers. When this very act was before the legislature, and the roll was called, the reading clerk did not call the Council Bluffs district and the Avoca district, but simply called the county of Pottawattamie, and its duly elected representative, elected by all the citizens of that county, cast his vote on behalf of all the people of Pottawattamie county. The construction placed upon this statute by the appellants, would mean that there were in reality two counties in Pottawattamie, with this we cannot agree. Under the statute the General Assembly did not limit the right to commence the action to a "citizen of the county" alone, but gave it also to "any society, association or body incorporated under the laws of this state." This latter provision throws light on the intent and purpose of the legislature in the enactment of this law, for it not only provided the equitable remedy of injunction, but provided liberal methods of beginning the action.

We can come to no other conclusion but that when section 1588 said "county", it meant county and nothing else, and that this applies to Pottawattamie county the same as it does to all other counties in the state.

Some other questions are raised but in view of the present

state of this record we do not find it necessary to discuss same.

Motion to strike appellee's amendment to appellant's abstract submitted with the case is overruled.—Affirmed.

MILLER, C. J., and SAGER, HALE, OLIVER, GARFIELD, and WENNERSTRUM, JJ., concur.