JOHN GUND BREWING Co., Appellant, v. C. H. PETERSON,
Appellee.

**Principal and agent:** FALSE REPRESENTATIONS OF AGENTS: LIABILITY
1 OF PRINCIPAL.  One who undertakes a sale of the property of
another with the view of securing a personal advantage there-
by, is bound by any misrepresentation of his agent in respect
to the title made within the apparent scope of his authority,
though not expressly authorized to make them.

**False representations:** KNOWLEDGE. One who falsely asserts as
2 true of his own knowledge a material fact as to the title to
property of which he is negotiating a sale, is liable for the
resulting damage irrespective of his actual knowledge on the
subject.

**Agency:** IMPLIED POWER.  An agent with simple authority to collect
3 an account of his principal has no implied power to settle a bill
of the debtor against his principal and credit the same on the
account.

**Authority of agent:** EVIDENCE.  The acts and declarations of an
4 agent are not generally competent evidence of his authority.

*Appeal from Clay District Court.*— HON. A. D. BAILIE,
Judge.

TUESDAY, APRIL 3, 1906.

ACTION to recover the balance due on the purchase
price of a car load of beer sold to defendant.   Defendant
pleaded the invalidity of the sale, and also a counterclaim

for damages growing .out of certain false and fraḍulent rep-
resentations made by plaintiff through its agent in the sale
of certain real estate.  He also pleaded payment and settle-
ment for the beer.  -Plaintiff denied the allegations of the
counterclaim, and on these issues the case went to a jury,
resulting in a verdict and judgment for defendant.  Plain-
tiff appeals.— *Reversed.*

*George H. Gordon* and *G. H. Martin,* for appellant.

*Thomas O'Connor* and *B. E. Kelley,* for appellee.

DEEMER, J.— The issue of illegality of the sale of the
beer was withdrawn from the consideration of the jury, and
to that we shall give no further attention.  The sole issues
presented were that of settlement and the counterclaim ten-
dered by defendant's answer; and the alleged errors have
reference to these two issues.  It appears from the testimony
that one Wagner was the owner of a piece of property in
West Bend, upon which he was conducting a saloon under
the so-called " mulct law," and that plaintiff held a mort-
gage upon this property to secure an indebtedness of $1,500.
Wagner had allowed his property to become dilapidated and
out of repair, and his business to deteriorate to such an
extent that he was anxious to dispose of it, as well as the
real estate connected therewith.  Learning of this condi-
tion of affairs, defendant wrote plaintiff to the effect, that he
had learned from one Pender that it owned or controlled the
Wagner saloon, and that he wished to rent it, but would not
buy because he had no ready money.  Thereupon plaintiff
wrote its traveling salesman, one Mathis, to the effect that
it had been informed by Pender that he had a purchaser who
would consider a proposition to buy the Wagner property.
It instructed its agent to call upon Pender, learn who the
party was, and negotiate a sale of the property for Wagner,
to the end that its claim against him might be satisfied and

canceled.  Mathis called upon Pender, and, learning that defendant was the prospective purchaser, called upon him, and talked about the sale of the property.  There is a dispute in the record about what Mathis told the defendant; but it is agreed on all hands that the purchase price was to be $2,500, and that the amount of plaintiff's mortgage upon the property was $1,500.  Defendant says that Mathis represented to him that there were no other incumbrances upon the property.  This is denied by Mathis, who testified that he said there were no other mortgages upon the property. As a result of the negotiations, defendant purchased the property, giving Wagner a check for $100, a note for $500, which was indorsed by Wagner and turned over to a bank at West Bend, and within a week paid $400 to the bank pursuant to agreement. .

It appears that at and prior to the time of sale there was a " mulct tax " in the sum of $183, which had been assessed against the property, that was a lien thereon, and 1. Principal and which defendant paid in the name of plaintiff .agent: false representations in December of the year 1900, as he says, of agent: lia-bility of prin-cipal. pursuant to the direction of plaintiff's agent. It is this tax so paid which defendant interposes as a counterclaim, and the payment of which he claims was a satisfaction of plaintiff's claim for beer sold him.  Appellant claims that it is not responsible for the representations of its agent, for the reason that in making the sale he was not acting for it, but Wagner; and that in no event could it be bound by any representations made by this agent, with reference to the title to the property.  While it is true that Wagner was the owner of the property, plaintiff undertook to negotiate the sale thereof for its own advantage, and directed its agent to negotiate a sale for Wagner in order that its claim against him might be satisfied and canceled.  In so doing, it became responsible for any act or representation of its agent within the scope or apparent scope of his authority; for, if it undertook to sell

the property even as agent for Wagner, it was responsible for any representations made in negotiating the sale. *Riley v. Bell,* 120 Iowa, 618.

Moreover, in negotiating this sale it had a direct interest, to wit, not only the securing of its claim against Wagner, but the establishment of a new base of supplies. Plaintiff's agent was not, therefore, acting for Wagner alone, but to subserve a purpose which it also had in view, viz., the security of its debt and the establishment of a place for the future disposition of its product. We may concede that Mathis was not authorized to execute any warranties connected with the sale of the property; but, as this action is not founded upon a warranty, that becomes a moot question. He did, however, have authority to negotiate a sale for Wagner, to the end that plaintiff's claim might be satisfied, and as such bound his principal to any misrepresentations made while negotiating the sale within the scope of his apparent authority; and this, we think, comprehends statements as to the condition of the title to the property he was proposing to sell. *Hakes v. Myrick,* 69 Iowa, 195; *Harrison v. Le Gore,* 109 Iowa, 618; *Slater v. Irwin,* 38 Iowa, 261; *Weber v. Weber,* 47 Mich. 569 (11 N. W. 389); Mechem on Agency, section 739. We may assume that without express authority the agent had no power to warrant the title; but as this action is not upon a warranty, but for false and fraudulent representations made at the time of sale, the assumption is not controlling. Misrepresentations made in connection with an authorized sale are binding upon the principal, although the agent who made them was not expressly authorized to do so. *Reynolds v. Witte,* 36 Am. Rep. 678; *Noble v. Northern Illinois,* 23 Iowa, 109; *Mankin v. Mankin,* 91 Iowa, 406. This is elementary doctrine, and we need say no more in this connection.

II. Coming now to the instructions which are challenged, we find that the trial court did not instruct that plaintiff or its agent must have known that the statements as to

title were false at the time they were made.  In effect it an-

**2. FALSE REPRE-**
**SENTATIONS:**
**knowledge.**

nounced the law to be that plaintiff was liable if its agent made the false representations relied upon, even though neither had knowledge of their falsity.  There was no proof that either plaintiff or its agent knew of the " mulct tax " lien upon the property at the time of the sale to the defendant.  Claim is now made that the trial court was in error in its instructions, and that a verdict should have been directed for plaintiff.  Ordinarily in actions at law for fraud and deceit proof of scienter is essential to a recovery.  But where one falsely asserts a material fact to be true as of his own knowledge, and injury and damage results therefrom, he is not thereafter permitted to assert that he had no knowledge upon the subject.  Riley v. Bell, *supra,* and cases cited.  While the instructions do not fully cover this proposition and should have been amplified somewhat, we would not reverse the case on this ground alone, although we may say that upon a retrial the law should be more clearly stated.

III. After the sale of the real estate plaintiff shipped the defendant the beer in question, and defendant failing to pay therefor, plaintiff sent its aforesaid agent to collect

**3. AGENCY:**
**implied power.**

the amount due.  He does not appear to have had authority to settle any controversy then or theretofore existing between his principal and defendant, and his sole authority was to collect the amount of the bill.  Defendant claims that, when the agent came to him, it was agreed between them that he (defendant) should pay the amount of the " mulct tax " lien, take a receipt in the name of plaintiff, and credit the amount thereof on his bill for beer.  This is denied by plaintiff's agent.  The trial court instructed that if such an arrangement as defendant claimed was established, and if defendant paid the tax, this would amount to a settlement and payment of the balance due plaintiff, and that there could be no recovery.  In this there was error.  The agent was not attempting to carry out any

previous contract he had made with the defendant, nor had he authority to do more than collect the balance due on the bill for beer.　In such circumstances he would have no implied power to settle past items of dispute, nor could he receive anything but cash for his principal.　Plaintiff was denying all liability for fraud or deceit on the part of its agent, and did not vest in him power to make any compromise or settlement thereof.　Armed with no other authority than to collect the amount. of plaintiff's bill for goods sold, its agent. had no power to settle prior disputes ·or to accept anything in payment save the usual medium of exchange.　These principles are also well established by authority.　*Drain v. Doggett,* 41 Iowa, 682; *Bigler v. Toy,* 68 Iowa, 688.　The instruction referred to was not based·upon the doctrine of ratification, but upon the apparent powers of the agent, and was as we think erroneous.

IV.　In two other instructions in referring to the authority, or apparent scope of the agent's authority, the trial court · in effect said that the jury should consider " whether or not

4. **Authority of agent:** evidence.

defendant acting as a reasonably prudent man was led to believe by the said Mathis and all the circumstances surrounding the transaction that said Mathis was the agent of plaintiff." · This was manifestly erroneous.　Acts and declarations of an agent are not generally admissible to prove his authority.　*Clanton v. Railroad Co.,* 67 Iowa, 350; Bigler v. Toy, *supra;* *Winch v. Baldwin,* 68 Iowa, 764.　It is a little difficult to understand this expression as used in the ninth instruction; but the jury might easily have inferred that the agent's authority, both apparent and real, might be determined from his acts, conduct, and declarations.　If this expression had been used with reference to the agent's authority regarding the sale, we might say there was no prejudice; but it was also injected into the instruction referring to the agent's authority to settle, and in that connection was clearly erroneous and prejudicial.

Other matters argued are determined by what has already been said, and need not be further considered.

For the errors pointed out, the judgment must be, and it is, *reversed.*