T. D. CONROY, Appellant, v. COUGHLON AUTO COMPANY et al.,
Appellees.

SALES: Rescission—Reasonable Time. Rescissions of sales must
1   be made promptly upon discovering the inducing fraud, but
there is no exact standard of diligence in following up and verifying suspicions of fraud, and no exact standard of *time* in which the vendee must rescind after obtaining proof of the fraud. *Held*, a rather belated rescission was timely.

SALES: Rescission—Delay—Change of Position of Other Party.
2   One guilty of fraud may not defeat rescission by the naked fact that he has disposed of the property which he received from the one seeking rescission, even though part of such property was a note and mortgage.

**SALES: Rescission—Trading Contract With Inflated Values.** Trad-
3 ing contracts with inflated values will, on rescission, be adjust-
ed on the basis of the actual values of the properties.

Appeal from Webster District Court.—H. E. FRY, Judge.

NOVEMBER 26, 1917.

SUIT to rescind a contract resulted in the dismissal
of the petition. The plaintiff appeals.—Reversed.

S. A. Frick and E. C. Stevenson, for appellant.

M. J. Fitzpatrick and M. C. Coughlon, for appellees.

1. SALES: re-
scission: rea-
sonable time.

LADD, J.—The plaintiff exchanged a
Ford automobile, 1911 model, at $225, a
team of horses, with double harness, blan-
kets and wagon, at $280, to defendants for a Detroiter
touring car, Model 2-A 2779, at the price of $930, execut-
ing his note for the difference of $425, and securing payment
thereof by mortgage on the last mentioned machine. This
happened on December 4, 1914, though the agreement was
entered into two days previous. In this suit, rescission of
the trade is sought, on the ground that defendants repre-
sented the Detroiter car to have been a 1914 model, with 30-
horse power engine, whereas it was a 1913 model, with 25-
horse power engine; and that such representation was made
with knowledge that plaintiff's purpose in exchanging was
to acquire a new automobile that he could sell. The evi-
dence leaves small room for doubt as to the misrepresen-
tation. The plaintiff testified to inquiring of Jeremiah
Coughlon, on December 2, 1914, "Is that a new 1914 mod-
el?" and to his answer, "These all are;" and again on the
4th, immediately prior to the consummation of the deal,
"Now Mr. Coughlon, this is a brand new 1914 model?" and
to his answer, "Yes, these are all 14's here." Culver, who
accompanied plaintiff, and also a son, Frank Conroy, swore

to having heard this question and answer in substance. On the other hand, Jeremiah Coughlon admitted having had no 1914 models, stated that he showed the Detroiter car to plaintiff, and swore that "not a thing was said about the model of the car to my knowledge, nor the size of the engine."

We are convinced that, though this car had been on hand since June, 1913, and was a model of that year, defendants, through Jeremiah Coughlon, falsely represented it to be new and of 1914 model. There was not much difference in the models of the respective years, being priced alike, and the 1914 model having engine with factory rating of 5-horse power higher, and, according to the A. L. A. M. ratings, 1.2-horse power greater. But for the purposes of sale,—and this was plaintiff's object in making the exchange,—the newer model evidently would be much the more desirable. Indeed, plaintiff would not have exchanged had he not supposed he was acquiring a Detroiter touring car of the latest model. It is quite clear from the record before us that the plaintiff was overreached by defendants in the trade, and that this was in consequence of the fraud practiced in the misrepresentation of the Detroiter touring automobile.

But it is urged that the election to rescind was not made within a reasonable time. The car was not used by plaintiff otherwise than in demonstrating for the purpose of sale, and, when this was done, objection was interposed that it was an old car; and in June, 1915, defendant called Coughlon's attention to the fact that he had traded it to him as a 1914 car, when it was made in 1913, and asked what he was going to do about it. In September following, in answer to inquiries by him, he was informed by the manufacturer that it was a 1913 model, and on the 28th of that month, caused to be delivered to defendants written notice that he had discovered the misrepresentation and that

he tendered to them the car and demanded the return of the property exchanged for it. This suit was begun October 26, 1915, again offering in the petition to do with the car as by the court directed.

While a party is bound to act promptly, if he would rescind, upon discovery of the fraud, how soon this must be depends on the facts of each particular case. One is not bound to suspect fraud, in the absence of anything to arouse suspicion. He may rely upon having been dealt with fairly until the discovery of evidence tending to show the contrary, and the degree of diligence in following up the clues uncovered by such evidence depends so much upon circumstances that no unvarying rule can well be laid down. Nor can it be said with certainty within what time after the perpetration of fraud has been ascertained, or in the exercise of ordinary diligence should have been ascertained, an election to rescind must be exercised, save that this must be done at once, or within a reasonable time after the discovery. *Strothers v. Leigh,* 151 Iowa 214. In *Moore v. Howe,* 115 Iowa 62, the former continued to treat the stock of goods as his own, sell therefrom, and appropriate the proceeds for four months after discovery of the defects complained of; and the court held this tantamount to an election to confirm the contract. In *State Bank of Iowa Falls v. Brown,* 142 Iowa 190, there were several renewals of the note given after the fraud should have been discovered. In *Mattauch v. Riddell Auto Co.,* 138 Iowa 22, the purchaser concluded that the automobile did not comply with the warranty, and did not tender its return until the latter part of December following.

Here the plaintiff was without evidence of the deception in June, when he talked with Coughlon, and did not know that the car was not of a 1914 model until so informed by a letter dated September 22, 1915, received from

2. SALES: rescission: delay: change of position of other party.

the manufacturer of the car. He tendered the automobile within a week thereafter, and then brought this suit. He made no use of the automobile after his suspicions of the perpetration of fraud were aroused, and defendants have not been prejudiced by the delay. In view of all the circumstances, it ought not to be said that there was unreasonable delay in rescinding the deal. True, defendants have disposed of the property received, as well as the note and mortgage; but this may be adjusted by an accounting for the value of the property and an appropriate provision in the decree with respect to the note and mortgage, whereby both parties may be protected. See *Creveling v. Banta*, 138 Iowa 47, 67; *Jefferson v. Rust*, 149 Iowa 594, 606; *Fulton v. Fisher*, 151 Iowa 429, 439.

3. SALES: rescission: trading contract with inflated values.

It should be added that the contract rescinded was a mere trading contract, and values appear to have been estimated for that purpose. Therefore the plaintiff should be allowed no more than the value of the Ford automobile, team, wagon, harness and blankets, the estimated values not being conclusive, but evidence merely of the worth thereof. *Fagan v. Hook*, 134 Iowa 381.

The cause will be remanded to the trial court, with instructions to determine from the evidence such values and enter a decree in harmony with this opinion.—*Reversed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.