G. G. JAMES, Appellant, v. HERMAN GRILL, Appellee.

CONTRACTS: Rescission—False Representations.   A written contract for sale of paints, providing that ·no agreement not expressed therein should be recognized, is not varied by pleading or evidence that the goods were sold under the representation that they were first class and merchantable, and that the purchaser was induced thereby to sign the said contract, and that, after the said goods were delivered, and a portion of the shipment opened and used, they were found to be utterly

worthless, and that he thereupon offered to return the same to the seller.

*Appeal from Crawford District Court.*—E. G. ALBERT, Judge.

SEPTEMBER 16, 1919.

ACTION to recover on a written contract for the sale of paint. Opinion states the facts. Judgment for the defendant in the court below. Plaintiff appeals.—*Affirmed.*

*Conner & Powers,* for appellant.

*Shaw Van & Shaw Van,* for appellee.

GAYNOR, J.—This action is brought to recover the price of certain paints sold and delivered to the defendant under a written contract, as follows:

"Omaha, Nebr., Aug. 24, 1914.
"Great Eastern Oil and Paint Company:
"State when to ship—At once.
"On..................... R. R. via
½ bbl. .... Ivory .... Red Oil    @ $0.90 per gal.
½ bbl. .... Ivory .... White Oil @ 1.25 per gal.
½ bbl. .... Ivory .... Slate Oil @ 1.25 per gal.
1 bbl. per oil ......... Oil       @ 1.25 per gal.
Gal. 50c for can .... Oil          @        per gal.
5 gals out of this shipment free for office.
Date Oct. 15th.
5 gal. cans 60c extra; 10 gal. cans 75c extra; f. o. b. Omaha.
"Terms—Net 60 days, or 2 per cent. for cash if paid in 10 days from date of invoice.
"This order is taken with the understanding that it is positive and not subject to change or countermand. *Any agreement* not stated on this order will not be recognized.
"Signature—H. Grill.

"R. R. Town—Denison.          "

"P. O. Address—Denison, Box No. ...

"County ............. State, Iowa.

          "W. B. Brace, Salesman."

The answer admits the giving of the order and the receipt of the goods, but defensively says that, at the time defendant gave the order, the goods were represented to him by the salesman of the seller to be of first-class quality and merchantable; that this induced him to sign the order; that, after said goods were delivered, and a portion of the shipment opened and used, he found that said goods were utterly worthless, and of no value whatever; that he notified the seller of their worthlessness, and offered to ship them to any point designated by the seller.

The cause was tried to the court, without a jury. The plaintiff offered in evidence the contract aforesaid, and then called one Walker to the stand, who testified that he was in the oil business; that he had known the defendant in a business way only, possibly two or three years; that the Great Eastern Oil & Paint Company is a commercial name, used by him in transacting business,—simply a trade-name which he employed; that the goods ordered were shipped in October, 1914; that, on July 10, 1915, the account was sold and transferred to this plaintiff, and the account belongs to him. He further testified as follows:

"The written contract signed by the defendant was taken by Mr. Brace, our salesman. He took the order, and it was accepted by me at my office in Cleveland. No guaranty of the goods was given, and none mentioned in this contract. Mr. Grill purchased a cheap grade of paint, agreeing to pay 90c a gallon for one of the half-barrels. I would have preferred selling him a higher grade of paint at a higher price. I also gave him a five-gallon can of Persian Varnish free of charge."

On this, plaintiff rested his case.

Thereupon, the defendant, over the objection of plaintiff, offered and introduced the following testimony: That his business is lumber and paint and contract work; that he lived in Denison; that he had been in business there 13 or 14 years. He testified, also:

"I met a traveling salesman by the name of Brace. I ordered the bill of paint from him. He had no samples. Brace said, at the time, that the paint would be strictly linseed oil and white lead; that it would neither fade nor rub off; that it would not settle in the bottom of the barrel; and that the paint that ran out of the top of the barrel would be the same as in the bottom. I signed this order upon his recommendation of the paint."

He further testified that, in the first place, there was no linseed oil in the paint,—not strictly linseed oil, only a part of it; and there was no pure lead in the oil.

"It was some kind of white paint. I wouldn't know what to call it. Of course, I am not a painter; but you could put it on a building and it would rub off."

He was asked:

"Did you use any of the paint? A. Yes. I used some of it. Q. What result did you obtain? A. Poor results. Q. Did you notify the oil company of the character of the goods? A. Yes, sir. I wrote them a letter regarding the character of the goods and notified them. I kept no copy of the letter. I explained to the company what the paint was and how the paint acted, and asked where I should ship it,—to Cleveland or Omaha. I have handled paint for many years."

Certain painters were called who had used the paint in question, and they testified that they had used it, and that it would not stand the test of weather; that they examined the paint after it was put on, and that it would scale off; that they would not consider it good paint; that it cracked and fell off, after it was there a little while; that it soon

faded. This is practically all the evidence offered.

At the conclusion of the evidence, the court entered a judgment for the defendant, dismissing plaintiff's petition. From this, plaintiff appeals.

The reversal points urged are: That the court erred in admitting the testimony of the defendant as to representations made by the agent as an inducement to the signing of the order, and in admitting evidence of the falsity of the same: and this on the theory that those representations, if made, constituted a warranty; that a warranty is a contract; that the contract of purchase and sale was in writing; that parol evidence to vary or change the terms of that contract, or to add to it, is incompetent; that parol evidence as to what was said and done between defendant and the agent could not be shown, in view of the fact that the contract actually made was reduced to writing, and that there was a provision in the contract that no agreement not expressed in the contract should be recognized. Plaintiff's contention is that prior or contemporaneous declarations or understandings are merged in a written contract, and direct and independent extrinsic evidence is not, in an action at law and in the absence of fraud, admissible to show an intention different from that contained in the instrument itself; that, where the contract is reduced to writing, the writing speaks for itself, and in the absence of fraud or mistake, must be accepted as the authoritative evidence of the contract, and all evidence to change or alter it or in conflict with its terms is inadmissible; that a written agreement between the parties is presumed to be the final agreement, and any prior parol agreement inconsistent therewith is presumed to be waived. These propositions of law are sound. In *Mast & Co. v. Pearce & Cowan,* 58 Iowa 579, this court, quoting from Benjamin on Sales, said:

"Where the written sale contains no warranty, or expresses the warranty that is given by the vendor, parol

evidence is inadmissible to prove the existence of a warranty in the former case, or to extend it in the latter by inference or implication."

This court further quoted with approval Judge Parsons' statement in his work on contracts, as follows:

"And where the contract of sale is in writing, and contains no warranty, then parol evidence is not admissible to add a warranty."

What was there said was again recognized and emphasized by this court in *Electric S. B. Co. v. Waterloo, C. F. & N. R. Co.*, 138 Iowa 369, 374, saying:

"We feel quite sure no authority can be found holding a contrary doctrine."

But it will be noted in this case that the defendant does not plead a warranty, nor does he seek to add to or take from the contract made. He simply says that he was induced to make the contract by representations which were untrue; that, when the goods were received and examined, he found that the representations that induced him to make the contract were not true; that he offered to return the goods to the plaintiff as soon as he ascertained the fact. It is practically saying that the agent of plaintiff's assignor, by a false representation as to the character and quality of the goods, induced him to make the contract; that he had no opportunity to examine the goods before he made the contract; that he relied upon the representations of the agent that the goods were of the character and quality stated, and was induced by such representations to enter into the contract; that, as soon as he discovered that the representations were not true, and that the goods were not of the character represented, he tendered back the goods to the plaintiff. Neither the pleading nor the evidence tends to vary the terms of the contract as entered into. The defendant does not plead any additional agreement. He pleads a misrepresentation as to the character of the goods, made at the time of the sale, that induced the

making of the contract, and by this seeks to avoid the obligation of the contract.

It is apparent that the defendant was in a business in which he required merchantable paint. It is clear that he wanted merchantable paint. It is clear that this fact was known to the agent of plaintiff's assignor. It is further clear that defendant entered into this written contract on the statement of the agent that the paint was of a character that made it merchantable. Upon trial, it was found not to be of a merchantable character. This the court could well find from the evidence introduced. Paint lacking in oil and lead is certainly not merchantable paint. This paint proved to be lacking in those essentials which go to make up merchantable paint. It was tried and found wanting. The defendant tendered it back. Plaintiff's assignor failed or refused to accept the tender, and he brings this action to force the defendant to pay for the paint. Upon the receipt of this paint, defendant had two rights: either to retain the paint and sue for damages, or to rescind the contract by returning, or offering to return, the thing received. He chose the latter. Fraud vitiates all contracts. Though the answer does not fully state what we have herein set out as fully as the pleader might have done, yet the answer was not challenged by demurrer or otherwise. A fair interpretation of the answer is that the plaintiff fraudulently represented the paint to be other and different than it was, and so induced defendant to sign the contract. When defendant received the paint, he discovered that it was not as represented. He offered to return it to plaintiff's assignor. This was refused. The refusal is evidenced by the fact that the seller made an assignment of this contract to the plaintiff, who brought an action upon it to enforce it. By this act he repudiated the offer to return. The rights of the defendant are to be judged by the facts pleaded and the evidence introduced. Defendant seeks no

affirmative relief. He bases no claim upon a warranty. He simply says that he was deceived into signing the contract, and that this deceit avoids the contract.

We think the court was right in its conclusion, and its action is—*Affirmed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.