L. A. ROBINSON, Plaintiff, Appellant, v. W. F. MAIN, Defendant, Appellee.

No. 44796.

1196

MARCH 5, 1940.

Floyd Philbrick, for appellant.

Geo. C. Claassen and E. A. Johnson, for appellee.

STIGER, J.— In 1931, defendant, W. F. Main, was in the business of selling penny vending machines and products to be vended therein in Cedar Rapids and conducted this business under the trade name of Standard Manufacturing Company. A machine and 20 pounds of confections were sold as a unit. Plaintiff, a resident of Galveston, Texas, entered into a contract through defendant's agent at Houston, Texas, on October 21, 1931, for the purchase of 50 units, that is, 50 machines and 1,000 pounds of confections, for $1,475, which sum was paid by plaintiff.

Under certain conditions expressed in the contract, defendant guaranteed a profit of 120 per cent from the operation of the machines for a period of 12 months. The contract contained the following provisions:

"This agreement is complete within itself, Salesmen are soliciting agents only, and have no authority to make agreements for the company, and no promises made by the salesman shall be binding on the company unless plainly written herein, and then only upon the written acceptance of the company at Cedar Rapids, Iowa.

"I HAVE READ THIS ORDER THROUGH AND UNDERSTAND ALL OF ITS TERMS AND CONDITIONS."

Plaintiff brought this suit to recover the purchase price, alleging rescission of the contract because of false representations made by the agent which induced him to enter into the contract. At the close of plaintiff's testimony defendant's motion for a directed verdict was sustained.

I. The first ground of the motion for directed verdict is that plaintiff did not prove any of the fraudulent representations alleged in his petition.

Grounds 2 and 3 of the motion are, in substance, that plaintiff learned of all of the misrepresentations that he alleges were made by the agent to induce him to enter into the contract by December 5, 1931, but continued to operate the machines as his own and thus affirmed the contract.

Plaintiff alleged the agent represented to him that the Standard Manufacturing Company had been in business for 52 years but due to its conservative policy had never before carried on its business in Texas; that the company was then entering the Houston territory for the first time; that he had secured

first-class locations for 490 machines which would be given to plaintiff when approved by the company; that the company was not dealing with anyone other than plaintiff because it desired only one person to handle its products in territories the size of Houston; that if plaintiff ordered 50 vending machines he would turn over immediately 50 of the best locations that had been secured and approved; that the agent stated he would instruct plaintiff in assembling the machines, introduce him to the owners of the locations selected and continue to work with plaintiff until each machine was operating at a net profit of at least $1.50 a week; that the confections manufactured by defendant and sold through the vending machines were especially made to withstand the heat and humidity of southern cities; that plaintiff would have the exclusive agency of the Houston territory; that the $10,000 bond which would be given by defendant as a guarantee of his performance of the contract would be a surety bond. Plaintiff alleged that, relying on the above representations of the agent, he signed the contract on October 21, 1931.

Plaintiff introduced evidence tending to support substantially all of the above allegations. On November 16, 1931, plaintiff wrote defendant complaining of the long delay in the arrival of the machines; his inability to get answers to his letters; that the machines finally arrived on November 10, but he was unable to find the agent who had promised to aid him. In this letter he stated that he had lost all confidence in the proposition and requested defendant "to arrange cancellation of all agreements and the subsequent return of his money." However, on November 23, 1931, plaintiff took possession of the machines and started placing them on location without the aid of the agent. With the machines were 17 location or commission agreements, each providing for three locations. Plaintiff left the machines out on location for about 2 months and until January 23, 1932. Within 10 days after he accepted the machines he learned there were vending machines in the Houston territory owned and operated by other agents of the defendant and that he did not have the exclusive territory and also learned that defendant had been selling machines in Texas and this territory for several years. With this knowledge plaintiff continued to operate the machines as his property until January 23, 1932,

and clearly indicated by his acts and letters to defendant that he considered the contract in full force.

It was plaintiff's duty to rescind the contract within a reasonable time after discovering the representations were false. With the exception of the representations that the confections were of a special quality and the guaranty bond would be a surety company bond, he must be held to have waived the representations made by the agent and to have affirmed the contract.

Plaintiff alleged and testified the agent represented the confections were especially made to withstand the heat and humidity of southern cities and was of a special quality and would not be apt to melt and "gum the machines." On or about December 23, 1931, he first discovered that dampness affected the candy causing it to stick in the machines and later in the season he discovered that the candy "ran together and became a solid block." In the latter part of January, plaintiff discovered that the confections in the boxes were melting and running together and formed a sort of syrup that ran out of the cartons. He testified that between February 10 and 15 that practically all of the confections in the cartons had "gummed up."

On February 19, 1932, plaintiff, through his Galveston attorney, wrote defendant definitely rescinding the contract. As above stated, it was plaintiff's duty to rescind the contract within a reasonable time after discovering that the representations were false. What is a reasonable time must be determined with reference to all circumstances, and ordinarily the question is for the jury though it may be a question for the court. Van Dyck v. Abramsohn, 214 Iowa 87, 241 N. W. 461; Bleecher v. Schmidt, 211 Iowa 1063, 235 N. W. 34; Brennan v. Nolan Laundry Co., 209 Iowa 922, 229 N. W. 321; National Bank of Decorah v. Robison, 199 Iowa 1044, 203 N. W. 295; Conroy v. Coughlon Auto Co., 181 Iowa 916, 165 N. W. 200; Todd Shoe Co. v. Pierce Shoe Co., 179 Iowa 1383, 160 N. W. 827; Cox v. Cline, 147 Iowa 353, 126 N. W. 330; Moore v. Howe, 115 Iowa 62, 87 N. W. 750.

Plaintiff had a reasonable time to determine the extent of the damage to the confections by heat and moisture. It cannot be said as a matter of law that plaintiff did not rescind the contract because of this representation within a reasonable time

after discovering that the quality of the confections was not as represented. The fact that he resided in Texas and defendant in Iowa may be taken into consideration in determining this issue.

Defendant contends plaintiff knew that the agent was a special agent with limited authority and that he was not bound by the false representations of the agent in excess of his authority or oral representations changing the terms of the contract. In support of this proposition, defendant relies on telegrams between plaintiff and defendant just prior to executing the contract and the statements in the contract that the agreement was complete in itself and that agents had no authority to make agreements for the company unless they were plainly written therein and then only upon the written acceptance of the company at Cedar Rapids.

On October 20, plaintiff sent the following telegram:

"Is Paul N. Patrick your duly authorized agent to negotiate placing your vending machines and products in Harris County, Texas. Do you waive identification. Are changes in regular contract permissible. On what amount do you refer to in guaranteeing one hundred and twenty per cent in your contracts. Wire reply immediately."

On October 21, plaintiff received the following telegram in reply:

"Patrick fully authorized negotiate and receive regular orders and remittances payable our order. Has credentials that will satisfy you his identity. Changes written in order permissible. One Hundred twenty per cent refers to total investment listed in order. Patrick competent, will instruct you for successful start. Glad to give full co-operation."

Plaintiff testified in regard to these telegrams as follows:

"We were together most of the afternoon of that day. After I had looked over and read the contract I did not feel satisfied to close the deal without first telegraphing to the company. After talking over all of the proposals and agreement that were discussed, I thot I had better telegraph to the company. I think it was on the 19th we talked this matter over, because I wired the company on the 20th. I telegraphed to

verify some of the claims with reference to whatever there is said in the contract on those phases. I didn't trust Patrick on those propositions.''

It is apparent that the telegrams referred solely to the contract and its terms. Plaintiff signed the contract upon receiving defendant's telegram advising him of the agent's authority to negotiate the contract and make written changes. Though plaintiff was bound by the limited authority of the agent to bind his principal by contract, he was not precluded from alleging and proving false representations of the agent inducing him to make the contract. Plaintiff is not suing defendant on an express or implied warranty in the contract. He does not claim that there were additional agreements with the agent which he is seeking to enforce as a part of the contract, nor is he seeking to vary the terms of the contract by parol agreements with the agent. Plaintiff states that he was induced to enter into the contract by representations which were untrue and that within a reasonable time after discovering that the representations were false he rescinded the contract. See James v. Grill, 186 Iowa 1300, 173 N. W. 897.

'' * * * false representations made by an agent at the time of the bargain, although unauthorized by his principal, may release the purchaser from his contract on the ground of fraud or deceit, solely on principles recognized in equity.'' Ellison v. Stockton, 185 Iowa 979, 986, 170 N. W. 435, 437.

In the case of John Gund Brewing Company v. Peterson, 130 Iowa 301, 304, 106 N. W. 741, 742, the court states:

''We may assume that without express authority the agent had no power to warrant the title; but as this action is not upon a warranty, but for false and fraudulent representations made at the time of sale, the assumption is not controlling. Misrepresentations made in connection with an authorized sale are binding upon the principal, although the agent who made them was not expressly authorized to do so.''

It is also true defendant was bound by the misrepresentations of his agent inducing the sale though the contract expressly limited the authority to make agreements for the com-

pany and stated that the buyer had read the order and understood all of its terms and conditions.

In Bonewell v. Jacobson, 130 Iowa 170, 172, 106 N. W. 614, 615, 5 L. R. A., N. S., 436, the opinion states:

"It is perhaps true that by a stipulation in a written contract collateral agreements or warranties attempted to be made by agents may be prevented from becoming portions of the contract between the parties, but no such stipulations can, as we understand it, prevent the interposition of the defense of fraud which has induced the making of the contract."

In the case of Good Roads M. Co. v. Ott, 186 Iowa 908, 913, 171 N. W. 721, 722, Justice Stevens, speaking for the court, states:

"But one other contention of counsel for appellant requires notice, and that is with reference to the following provision of the contract:

" 'This order embodies the entire understanding, is not subject to countermand, and is not affected by any verbal agreements.'

"Evidence tending to show that defendant was induced to sign the contract by fraudulent representations by the plaintiff is not excluded by this provision thereof. Such was our holding in Bonewell & Co. v. Jacobson, 130 Iowa 170."

See Pictorial Co. v. Fitz Gibbon & Son, 163 Iowa 644, 145 N. W. 315; McTee v. Ryder, 221 Iowa 407, 265 N. W. 636.

One of the alleged misrepresentations is that defendant would furnish a surety company bond in the sum of $10,000 to guarantee his performance of the contract.

The recital relative to the bond in the proposed contract which was submitted by the agent to plaintiff is "send $10,000 guaranty bond to W. L. Moody & Company, Galveston, Texas." Plaintiff testified that the agent stated when he presented the contract to him for signature that defendant would deposit a $10,000 surety company bond in any bank designated by plaintiff and plaintiff designated the W. L. Moody and Company Bank.

Prior to shipping the machines, defendant, on October 26, sent a $10,000 bond to the bank and on October 29, the bank acknowledged receipt of the guaranty bond stating to defendant

that it had notified plaintiff that it had received the bond. The surety on the bond was J. R. Main, wife of defendant. Plaintiff does not deny that he was notified in October that the bond was at the bank but testifies that he first saw the bond in the bank on February 6, 1932, and then discovered that it was not a surety company bond. On cross-examination plaintiff testified:

"The things I was interested in when I was talking to Patrick was to see that there was a surety on the bond that was financially responsible, so they could respond in the event I had damages coming, and that is what I relied upon when I talked to Patrick. I didn't have in mind and didn't rely upon it being a Texas bonding company, or that it was to be a bond company that had qualified to do business in Texas."

Defendant urges that this testimony establishes that plaintiff was not relying on a surety company bond but only required that the surety on the bond would be financially responsible and that he did not introduce testimony showing that Mrs. Main was not a responsible surety. We cannot agree with defendant's contention. There is nothing in the record to show that plaintiff was not at all times relying on a surety company bond. He testified that he relied on the representation of the agent that defendant would furnish a corporate surety bond.

Plaintiff assumed that the bond was as represented and it cannot be said that plaintiff was charged with knowledge that the bond did not conform to the representation prior to the time he discovered on February 6 that Mrs. Main was the surety. He notified defendant at Cedar Rapids on February 20 of his rescission of the contract and it was for the jury to say whether the rescission was made within a reasonable time.

II. Grounds 5 and 6 of the motion for a directed verdict are:

"5. That the record affirmatively fails to show that the plaintiff ever made a tender to return the merchandise to the defendant at Cedar Rapids, Iowa, and there is no competent, relevant or material testimony in support of any such attempt or offer.

"6. The record further affirmatively shows that this is a law action and not an equity action, and that any and all alleged tenders that the plaintiff claims he has made, have not been

kept good, that the plaintiff could not, by an allegation in his pleadings in a law action, keep the tender good, but the money or property involved must be actually or constructively placed within the jurisdiction of the Court and subject to its orders, and that in this case the record affirmatively shows that the goods, if any are still in existence, are in a basement in a house in Houston, (Galveston) Texas, in which the plaintiff does not live, and if this case were permitted to go to the jury and a verdict was returned for the plaintiff, the defendant might well find himself in a position where he could not get his merchandise, and it being a law action the Court has no control over that.''

With reference to the 5th ground of the motion, this action is based on a rescission of the contract and plaintiff was not required, under his duty to restore the status quo, to return the property to Cedar Rapids. A tender at the place of delivery of the property which was Houston, Texas would have been sufficient. Hughes v. National Equipment Corporation, 216 Iowa 1000, 250 N. W. 154; Van Dyck v. Abramsohn, 214 Iowa 87, 241 N. W. 461; Lake v. Western Silo Co., 177 Iowa 735, 158 N. W. 673.

We now consider ground 6 of the motion which is that plaintiff did not keep his tender good by actually or constructively placing the property within the jurisdiction of the court and subject to its orders.

Plaintiff wrote a letter to defendant on February 19, 1932, rescinding the contract. On March 4, 1932, defendant wrote plaintiff's attorney the following letter:

''Upon my return to my desk I find your letter of February 23d awaiting my attention.

''I will check up on the matter you have mentioned and will write you within the next few days. I assure you I will be glad to cover these matters in detail.''

No further communication was received by plaintiff or his attorney from the defendant. Plaintiff, in his petition, alleged a rescission of the contract stating ''he was rescinding and repudiating said contract and tendered to the defendant the merchandise which had come into the possession of the plaintiff under said contract for such disposal as the defendant might

indicate and for the use of the defendant and does here and now continue said tender.''

Plaintiff testified that he took the machines out of the depot on November 23, 1931, and kept them on location until about January 23, 1932. After January 23, he took the machines to Galveston and cleaned them preparatory to shipping them to defendant.

He further testified: ''The machines are now stored in the basement of the house owned and occupied by my father in Galveston, Texas. I maintain a separate home at present in Texas City; I never moved to Houston.

''I cleaned up the machines and packed them in boxes, bowls in one box and the metal parts in another and got them ready for shipment to the defendant and had them ready any time he might indicate an acceptance of them, ever since the first part of February, 1932.''

Plaintiff's evidence shows that he notified defendant of his election to rescind the contract, tender of the machines and defendant did not recognize the rescission and refused the tender. Plaintiff then retained possession of the machines for defendant as defendant's property holding them in readiness to deliver to defendant on demand. Plaintiff did all that he was required to do in his effort to restore the status quo.

In Lake v. Western Silo Co., 177 Iowa 735, 740, 158 N. W. 673, 674, plaintiff rescinded a contract of sale and sued at law for the purchase price. Plaintiff did not expressly allege a return or an offer to return the property. Defendant refused to accept a return of the property. The court states:

''Defendant admitted, however, that it received a letter from plaintiff's counsel, before suit was brought, that the machine was there at its (defendant's) risk. Was this a sufficient tender, or offer to return the silo? The general rule is, that, if a buyer rescinds a contract of sale, he must return, or offer to return, all that he has received under the contract; and the tender, or offer, should be to return the property to the place where the property was received by the buyer; and, to make out a case for rescission, such tender must be pleaded, or an offer to return must be made in the pleadings. National Imp & Cons. Co. v. Maiken, 103 Iowa 118 [72 N. W. 431]; Eadie v

Asbaugh, 44 Iowa 519; Lunn v. Guthrie, 115 Iowa 501 [88 N. W. 1060]; McCorkell v. Karhoff, 90 Iowa 545 [58 N. W. 913]."

In Hughes v. National Equipment Corp., 216 Iowa 1000, 1011, 250 N. W. 154, 159, Justice Donegan, speaking for the court states:

"Appellant contends that, the dumptors having been delivered to the appellee at Jamesport, Mo., it was incumbent upon the appellee, in order to rescind the contract, that such dumptors be returned to the appellant at the place of delivery in as good condition as they were received. * * *

"As stated in the above citation, the law does not require the doing of vain things, and, under the circumstances and in view of the conduct of the appellant, we do not feel that there was any duty upon the part of the appellee to return the dumptors to Jamesport or to any other place, because he had ample reason to believe that the same would not there be accepted by the appellant."

In Cox v. Cline, 139 Iowa 128, 132, 117 N. W. 48, 50, it is stated:

"If the party acts with reasonable promptitude when the fraud is discovered, a rescission of the contract will be effected by a bona fide offer to return the consideration received and by holding it in readiness to be delivered if the offer to return be refused." See Van Dyck v. Abramsohn, 214 Iowa 87, 241 N. W. 461.

Appellee, to sustain the verdict, cites Hayward v. Munger, 14 Iowa 516; Shugart & Lininger v. Pattee, 37 Iowa 422; Deacon v. Central Iowa Investment Co., 85 Iowa 180, 63 N. W. 673; Freeman v. Fleming, 5 Iowa 460; Long v. Howard, 35 Iowa 148; and West v. Farmers Mutual Ins. Co., 117 Iowa 147, 90 N. W. 523.

These cases are all law actions in which tender of money was pleaded.

In Shugart & Lininger v. Pattee, 37 Iowa 422, 425, the opinion states:

"Under our statute a party may tender money in two different ways—one is by a production of the money and offering to pay it, the other is by an offer in writing to pay a particular

sum. Either of these modes is good, but in either case, if the tender is not accepted, and suit is brought, and the tender pleaded, it must be kept good by payment of the money into court.''

In none of the cited cases are the duties of a vendee in rescinding a contract of sale and restoring the status quo involved and the rules announced and adhered to in said cases are not controlling here.

█ Appellee contends that the ruling of the trial court must be sustained because plaintiff did not tender defendant the confections. Defendant, under the contract, delivered to plaintiff 515 pounds of confections, retaining the remainder of the 1,000 pounds purchased until called for by plaintiff. With reference to the 515 pounds of confections that were shipped to him, plaintiff testified:

''After putting the confections in the machines I went around and examined them. I later ascertained that these confections would melt because of the dampness of the climate, run together and spoil and gum up the machine. Sometimes the candy would become a solid mass in the glass bowl. One bowl broke attempting to loosen the candy.''

He further testified on cross-examination:

''I found a few coins in those few machines but I couldn't tell you how much candy was vended through the machines. There was so much of the candy spoiled. Most of it spoiled then I threw it in the alley. When I took the last machines up, the unsold and unused candy on hand I had kept at home and this eventually spoiled, so I threw it away because there was nothing else to do. I couldn't tell definitely how much was left as I took the machines in in January of 1932 but I did throw away some 20 or 25 boxes of it and the same applies to the ball gum. I threw it all away after it had spoiled.''

Plaintiff was not obliged to return the confections if they were worthless. Pleak v. Marks & Shields, 171 Iowa 551, 152 N. W. 63. See 55 C. J., page 280 and cases cited. The plaintiff testified in substance that the confections in the machines and in the boxes spoiled because of the heat and dampness and he threw them away. The rule that a party cannot rescind a con-

tract of sale without first returning or offering to return the consideration received has its foundation in equity.

Plaintiff rescinded the contract of sale because of fraudulent representations and, in making restoration, he was required only to do substantial justice to defendant. The testimony of the plaintiff justifies the conclusion that the confections were worthless and he was excused from returning them. He made a proper tender of the machines, and on refusal of the tender he kept it good. We are of the opinion that the failure of the plaintiff to tender to defendant the "few coins" he found in the machines does not constitute such a failure to restore the status quo that would prevent him from recovering the purchase price.

The court erred in sustaining the motion and directing a verdict for defendant.—Reversed.

BLISS, MILLER, RICHARDS, and HALE, JJ., concur.