Frank R. SMITH and Betty Jayne Glasser, Plaintiffs,

v.

NEW YORK LIFE INSURANCE COMPANY, Defendant.

Civ. No. 2-456.

United States District Court
S. D. Iowa, W. D.

Aug. 31, 1962.

———◆———

Fred Egan, Missouri Valley, Iowa, for plaintiffs.

Robert G. Riley, Des Moines, Iowa, for defendant.

STEPHENSON, Chief Judge.

### STATEMENT OF THE CASE

This case was removed from the State Court and was tried in this court without a jury. The jurisdictional basis is diversity of citizenship, the plaintiff is a citizen of Iowa and the defendant is a corporation, incorporated under the laws of New York. The amount in controversy exceeds $10,000, exclusive of interest and costs. Plaintiff asks for damages accruing to him because of the fraud

and misrepresentation of the defendant's agent.

## FINDINGS OF FACT

The plaintiff, Frank R. Smith of Missouri Valley, Iowa, contacted Clarence W. Haight, life insurance salesman for the New York Life Insurance Company, in late September or early October of 1958, at Haight's office in Omaha, Nebraska, for the purpose of purchasing a terminable annuity contract from the defendant. At this meeting, Smith told Haight that he had $15,000 with which he wanted to purchase an annuity contract that would give monthly payments and that he wanted a contract that he could refund to get the commuted value if it were needed by him. They further discussed Smith's age and what monthly annuity he could expect. Also at this first meeting, Haight told Smith that he would not be able to get his money back except in the case of an emergency. Smith was advised that he would be able to get $90.60 per month for life and in the event of his death prior to the time he had received $15,000, the balance remaining of the single premium would be payable to the daughter, Betty Jayne Glasser, in installments of $90 per month.

Approximately one week later, on October 7, 1958, Smith and Betty Jayne Glasser went to the office of the defendant's agent to apply for the annuity contract which had previously been discussed. At this meeting, Haight again assured Smith that he could have the annuity contract commuted if he needed the money for an emergency. Smith asked Haight if he could see a copy of the contract. However, he was refused, the defendant's agent stating he did not have a copy of the contract available, but that the plaintiffs could rely on his statements. Smith then gave Haight a check for $15,000 payable to the New York Life Insurance Company, which was subsequently received and accepted by them and honored by the drawee bank upon presentment for payment. Frank R. Smith received the annuity contract

and his monthly annuity payments commenced November 10, 1958.

Thereafter, Smith, who had been living alone in a second floor apartment, found it necessary because of his illness, to move to a first floor location and desired to have his daughter, Betty Jayne Glasser, live with him in order that she might help take care of him. Smith considered this to be an emergency such as was represented to him as being within the terms of the contract so as to entitle him to the commuted value. He went to the defendant's agent, Haight, to apply for the commuted value and was told by Haight to correspond directly with the defendant.

On October 22, 1959, Smith made demand by letter upon the defendant for the commuted value of the annuity contract which demand was refused on November 6, 1959, by letter alleging that the terms of the contract did not provide for the payment of the commuted value. This letter of November 6, 1959, was the first time that Smith was aware of the misrepresentation of the defendant's agent.[1]

## CONCLUSIONS OF LAW

The facts of this case suggest that the first problem that requires solution is to determine what state law is applicable.

 Applying the rule set down in Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) this court looks to the Iowa conflict of laws rule to determine what state law should be applied in a diversity case. Having found no direct Iowa authority it is the duty of this court to predict the manner in which the Iowa Supreme Court would resolve this question had it been presented to that court. See Wendt v. Lillo, 182 F.Supp. 56 (N.D. Iowa 1960), wherein Graven, J., looked at the Restatement of the Law, law review articles, A.L.R., and text books, as well as the cases from other jurisdictions.

The Restatement, Conflict of Laws, Section 377 (1934) is as follows: "The

---

1. Plaintiffs now tender into court the annuity contract dated October 10, 1958.

place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." And in Note 4 of this section it is said: "When a person sustains a loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made."

Further, Sections 378–79 and 387 are applicable in applying this place of wrong to the tort and agency questions presented herein.

In 11 Am.Jur., Conflict of Laws, Section 14 (1937) it is said: "The courts will assume that a case is to be governed by the laws of the forum unless it is expressly shown that a different law applies, and in the case of doubt as to whether the lex loci or the lex fori should govern, the court will naturally prefer the laws of its own state or country."

From 15 C.J.S. Conflict of Laws § 12 (2) (1939) we find: "The place of wrong the law of which governs torts is the place where an injury is suffered rather than the place where the act which caused the injury was committed."

Each of these authorities and the cases cited therein suggest that the prevailing choice of law rule requires that the Iowa substantive law be applied.

Another line of thinking which is becoming more predominate in the field of conflict of laws would criticize the above authorities because of the rigidity of the vested rights theory. This more modern local law theory would have the forum state apply its own law but reshape it with the law of another state after taking into account the significant contacts with other jurisdictions, keeping in mind surprise to the parties and socially desirable results as dictated by trends in the law.[2] In the present case there is no indication that the substantive laws or the policy of the laws of the states with contacts in this case is any different from the Iowa law, hence there is no conflict and since Iowa has a contact in addition to being the forum there is no reason to look to the law of other states. Even if there were a difference there is no indication that the defendant could be unduly surprised by the application of Iowa law and indeed it knew or should have known that Iowa law may be used in an action against it since the defendant is licensed to do business in Iowa, and there is no showing that holding the defendant liable for the unauthorized acts of fraud and misrepresentation of the agent is a deviation from the socially desirable result. It is admitted that there is a significant contact with New York and it does have an interest in having its law applied since New York has an interest in protecting its corporations and there is a significant contact with Nebraska and Nebraska does have an interest in having its law applied to transactions and occurrences arising out of Nebraska, and likewise Iowa has an interest in having its law applied to protect the rights of its citizens.

It is concluded that the Iowa Supreme Court, if presented with this issue, would apply the Iowa substantive law. It is not necessary to now decide which method the court may use to reach this result since both methods suggest the same finding.

With respect to the agency question raised, this court finds that the defendant is bound by the statement of Haight to the effect that the plaintiff could get the commuted value in the event of an emergency. There is ample authority in the Iowa cases that a principal is liable for the fraudulent misrepresentations of its agents. A concise and comprehensive review of the authority can be had by examining the

2. See Currie, Notes on Methods and Objectives in the Conflict of Laws 1959 Duke L.J. 171; Currie, On the Displacement of the Law of the Forum, 58 Colum.L.Rev. 964 (1958); Traynor, Is this Conflict Really Necessary?, 37 Texas L.Rev. 657 (1959); Weintraub, A Method for Solving Conflict Problems, 21 U.Pitt.L.Rev. 573 (1960).

two cases of Turner v. Zip Motors, Inc., 245 Iowa 1091, 1096–1097, 65 N.W.2d 427, 430, 45 A.L.R.2d 1174 (1954) and Robinson v. Main, 227 Iowa 1195, 1201–1202, 290 N.W. 539, 543 (1940).[3]

Although the theory under which this cause of action is brought is not clear from the pleadings or the briefs, it appears that this action is for damages under the theory of the tort of deceit.

■ The elements which must be proven by the plaintiff in an action of deceit are: (1) A false representation of material facts. (2) The defendant knew these representations were false or were made as true with no reasonable ground for believing them to be true. (3) These representations were made with intent to deceive. (4) The plaintiff relied on them. (5) The plaintiff was damaged because of his reliance.[4]

There is a controversy as to whether or not the defendant's agent made a statement to the effect that the annuitant could get the commuted value of the annuity in the case of an emergency. This court found that the statement was made on one or more occasions. This was a material representation because it was one of the primary inducing factors in the plaintiffs' decision to purchase the annuity policy. The court has found from the evidence that the agent knew these representations were false or he made them with no reasonable ground for believing them to be true. With regard to the element of intention to deceive, the fact finder is entitled to use a permissive inference,[5] as well as consider additional evidence to determine this question. The court has found the agent made the statements with intent to deceive.

■ Reliance has been shown by the testimony of the plaintiff, Frank R. Smith, that he would not have bought the annuity if he could not have been able to get his money back in an emergency. Also since the agent did not have a copy of the contract, the plaintiff had to rely on the statements of the agent. Hindsight would indicate that Smith was not reasonable in relying upon the statement of the agent. However, the facts of this case indicate the reliance was reasonable. Smith was a 71 year old man who had purchased two other insurance contracts from this agent. There is no evidence that at any time had he heard of any prior misrepresentations by this agent or this company. The agent did not have a copy of the contract in his office, but instead just an application which did not explain the terms of the contract. Additionally the superior knowledge of insurance possessed by the agent, as well as the element of the confidential relationship[6] between the parties brings this close to a fiduciary relationship,[7] at least close enough that it can be said here that the plaintiff was reasonable in relying on the statements of the agent.

■ The final element of the plaintiff's proof of deceit is that he was damaged because of his reliance. In Dimond v. Peace River Land & Development Co., 182 Iowa 400, 415, 165 N.W. 1032, 1037 (1918) an action for rescission because of fraud practiced on the plaintiff it was

3. See also 16 Appleman, Insurance, Section 8866 (1944).

4. See, e. g., Equitable Life Insurance Co. of Iowa v. Halsey Stuart & Co., 312 U.S. 410, 420, 61 S.Ct. 623, 85 L.Ed. 920 (1941) (interpreting Iowa law); LaMasters v. Springer, 251 Iowa 69, 72, 99 N.W.2d 300, 302 (1959).

5. Smith v. Packard & Co., 152 Iowa 1, 130 N.W. 1076 (1911) (intent to deceive may be inferred from proof of the false statements and proof that they were made with knowledge of their falsity;

limits Boddy v. Henry, 126 Iowa 31, 101 N.W. 447 (1904) which appears to allow a conclusive presumption).

6. "A confidential relationship exists between two persons when one has gained the confidence of the other and purports to act or advise the other's interests in mind." Restatement, Trusts, Section 2(b). Cited in Popejoy v. Eastburn, 241 Iowa 747, 757, 41 N.W.2d 764, 769 (1950).

7. See Vance, Insurance §§ 96–98 (2d ed. 1930).

said: "The party purchasing is entitled to what he buys, and is entitled to have it of the character represented, and is not bound to take it and hold it, even though it is not of less value than the amount he agreed to be paid for it." Applying this to the facts of the present case this court finds the plaintiff was damaged by the misrepresentation.

IT IS THEREFORE ORDERED that the New York Life Insurance Co. shall pay to the plaintiff, Frank R. Smith, the commuted value of the annuity contract, the amount to be agreed upon by the parties.

IT IS FURTHER ORDERED that in the event the parties cannot agree, the proposed values shall be submitted to this court for determination of the commuted value.

IT IS FURTHER ORDERED that upon payment of the commuted value of the annuity contract tendered herein, the Clerk is directed to cancel said annuity contract and return the same to the defendant.