OF THE

## STATE OF IOWA

AT

## DES MOINES, MAY AND SEPTEMBER TERMS, 1911.

AND IN THE SIXTY-FIFTH YEAR OF THE STATE.

---

J. A. SMITH, Appellant, v. PACKARD & COMPANY, W. S. PACKARD and O. C. STEINHAUSER, Appellees.

**Fraudulent representations:** EVIDENCE. In an action for false rep-
1 resentations concerning the character and boundaries of land, re-
fusal to permit plaintiff to state whether he would have pur-
chased the same had he known that certain land was included
was proper, as the same was simply an indirect method of prov-
ing his reliance upon the representations and in the nature of
cross-examination.

**Same:** MISREPRESENTATION OF GOVERNMENT LAND: MEASURE OF DAM-
2 AGES. The measure of damages for false representations con-
cerning the character and boundaries of land embraced in a
homestead entry is the difference between the value of the re-
linquishment as it was and its value as it would have been had
the land been as represented, rather than the difference between
the value of the land after final proof and the value it would
have had if as represented.

VOL. 152 IA.—1.

**Same:** INSTRUCTIONS CONCERNING EXCLUDED EVIDENCE. Omission to specifically call the attention of the jury to parts of a deposition which were excluded by reference merely to the numbers of the interrogatories will not be presumed prejudicial, especially as no request for a more specific instruction was made and the ruling was available to the plaintiff in his argument to the jury.

**Same:** INTENT TO DECEIVE: INSTRUCTION. Intent to deceive is a necessary element in an action for deceit and the burden of proving it is upon the plaintiff, but this intent is involved in and may be inferred from proof of the false statements and that they were made with knowledge of their falsity; and the instructions in this case place no greater burden upon plaintiff than is required by the above rule.

**Same:** MISREPRESENTATIONS: KNOWLEDGE OF FALSITY: INSTRUCTION. One professing to know the true boundary of land which he points out to a purchaser can not excuse himself for misrepresenting the true boundary, on the ground that he did not know that the line so pointed out was incorrect. The instruction in this case when applied to the pleadings and evidence is erroneous, in that it conveyed the idea that if defendant did not personally know the true boundary he would not be liable for pointing out to plaintiff a false line.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, MAY 2, 1911.

ACTION for damages for alleged false representations in the sale of a relinquishment of a homestead entry in South Dakota. There was a trial to a jury, and a verdict for the defendants. From a judgment entered thereon, the plaintiff has appealed.—*Reversed.*

*A. L. Steele,* for appellant.

*Sullivan & Sullivan,* for appellees.

EVANS, J.—The plaintiff is a resident of Des Moines. The defendant is a partnership consisting of two or more

persons. The representations complained of were partici-
pated in by more than one person. We shall therefore re-
fer to the defendant in the plural number.

The defendants were engaged in the real estate busi-
ness in South Dakota. On of the partners lived in Des
Moines. In 1907 the plaintiff was desirous of · locating
a homestead in South Dakota, and desired to purchase a
relinquishment from some occupant of a suitable quarter
section for that purpose. He purchased such relinquish-
ment through the agency of the defendants, paying to them
$500 therefor. He avers that he made such purchase in
reliance upon certain false representations made to him
by the defendants, whereby he was deceived and damaged.
The substance of these representations, as he charges them,
was that the quarter section covered by the proposed re-
linquishment contained about one hundred and twenty acres
of good, level, tillable land and about forty acres of rough
land suitable for pasture, and that it would be worth from
$12 to $15 per acre when proven up. Upon the sugges-
tion of the defendants, he went to Dakota to see the land.
He went upon the land in company with one of the de-
fendants, who purported to show the same to him. The
land was known as the northwest quarter of a certain sec-
tion 20. The rough land thereon was said to be in the
northwest corner, whereas the good land lay to the east.
The land shown to him corresponded to the description and
was satisfactory to him. After his purchase of the relin-
quishment, he discovered, as he alleges, that he had been
misled as to the boundaries, and that the greater part of
the good land which was shown to him was included in
the northeast quarter of such section 20, and that the
land included within his true boundaries was nearly all
rough and worthless. The answer of the defendants was
in effect a general denial of all fraudulent representations.

I. Plaintiff was a witness in his own behalf. His
counsel put to him the following question: "Now, Mr.

Smith, had you known that the one hundred and twenty

1. FRAUDULENT
REPRESENTA-
TIONS:
evidence.

acres of level land lying east of the hills was not on your quarter section, would you have filed on that land?" An appropriate objection to this question was sustained, and complaint is now made of the ruling. The only apparent purpose of such question was to prove that the plaintiff relied upon the alleged false representations. He could have testified directly to the fact of such reliance, and there was no occasion to resort to an indirect method. The question was in the nature of cross-examination, and there was no error in excluding it.

II.  Complaint is also made, because the court refused to permit the plaintiff to prove the value of the quarter section covered by such relinquishment and upon which the plaintiff filed a homestead entry. The record

2. SAME: mis-
representation
of government
land:  measure
of damages:

shows that the court was in some doubt as to the rule which should obtain for the measure of damages and invited the discussion of counsel on the question. He first permitted the plaintiff to testify to the value of the land and afterwards struck out the evidence, and announced to counsel that he would hold the measure of damages to be the difference between the value of the relinquishment as it was and its value as it would have been, if the land covered by it had been as good as represented by the defendant. It is the contention of plaintiff that he should have been permitted to show the value of the land in its actual condition as *such value would be after he had proven up under the homestead act,* and the value of such land as it would be when proven up, if it had been as good as represented. The *future* value of the land necessarily involved a speculative element. It required time, occupation, and expense in order to make final proofs. Doubtless these elements would enter into the consideration of any witness in giving his opinion as to the value of the relinquishment. The present value of

the relinquishment was not measured by the future value
of the land, nor even by such future value, less expenses.
It was no more difficult to prove the value of the relin-
quishment as such by the direct opinion of the witness,
than it was to prove the future value of the land.   The
elements which entered into such valuation might, perhaps,
be inquired into on cross-examination.   We do not think
the court erred at this point.

III.   Later the trial court permitted Hans Johnson, a
witness for the defendants, to testify that the land in ques-
tion was worth $10 an acre.   Such testimony was permitted
over appropriate objections by the plaintiff.

3. Same:
instructions
concerning
excluded
evidence.

The ruling was clearly inconsistent with the
rule imposed upon the plaintiff and was erro-
neous.   Still later in the trial, the court
sustained the plaintiff's objections and struck out such evi-
dence.   Whether this was done in a way to give the plaintiff
the benefit of the ruling before the jury is not free from
doubt.   The testimony in question was contained in a depo-
sition and consisted of answers of the witness to interroga-
tories fourteen and fifteen of such deposition.   The court
simply announced at a later stage of the trial that it would
sustain the objections to interrogatories fourteen and fifteen
in Johnson's deposition, and that the answers would be
stricken.   In no other way was the attention of the jury
directed to the evidence which was thus excluded.   No re-
quest was made that the attention of the jury be directed
to the fact, nor that the evidence be ruled out in a more
specific way.   The ruling, however, was clearly available
to the plaintiff in his argument before the jury.   We
think, therefore, that we ought not to presume that the
jury was ignorant of the effect of the ruling.

IV.   Plaintiff's petition charged that:   (1) Represen-
tations complained of were false; (2) that the defendants
knew them to be false; (3) that they were made with
intent to deceive; (4) that the plaintiff relied on them;

(5) that he was damaged thereby. The trial court in-
structed the jury that it was incumbent upon

**4. SAME:
intent to
deceive:
instruction.**

the plaintiff to establish each of the above
elements by a preponderance of the evidence.
Plaintiff complains of this instruction. He urges that
he was not required to prove an *intent to deceive*. In sup-
port of this contention, reliance is placed on *Boddy v.
Henry,* 126 Iowa, 31. Counsel misconceives the purport
of the holding in that case. Intent to deceive is neces-
sarily the gist of an action for deceit. The *burden* of prov-
ing it is necessarily upon the plaintiff. The method of prov-
ing it is quite another question. It is always an element
of plaintiff's case, necessary to be alleged, and therefore
necessary to be established.

However, the same evidence that proves that a defend-
ant made representations known by him to be false, upon
which plaintiff relied to his injury, is ordinarily sufficient,
also, to establish the intent to deceive. The intent, being a
mere act of the mind of the defendant, is usually estab-
lished by appropriate inference and presumptions from the
overt acts proved. In such a case the deceit consists in in-
ducing the action of the plaintiff by representations known
by the defendant to be false. It is theoretically possible
for one to make representations known by him to be false,
and yet without intent on his part to deceive; but this is
not the rule. In the *Boddy* case, *supra,* the trial court had
greatly emphasized the necessity of plaintiff's proving the
"intent to deceive" in addition to the false representations
and the *scienter,* as though it were necessary to prove this
element by some evidence additional to the evidence in
proof of falsity of representations and *scienter;* and he
failed to instruct that if the latter were proved the intent
could be inferred or presumed. In *Ley v. Insurance Com-
pany,* 120 Iowa, 203, Mr. Justice Weaver makes the follow-
ing appropriate quotation from *Brackett v. Griswold;* 112
N. Y. 467 (20 N. E. 379), which is a condensation of

the five elements of this action into five words, viz., "Representation, falsity, scienter, deception, injury." In *Haven v. Neal,* 43 Minn. 315 (45 N. W. 612), the Supreme Court of Minnesota states the rule in this wise: "In order to sustain an action for deceit, the fraudulent intent must be established; but it may be inferred from the fact that the false statements are made with knowledge of their falsity. And where a party who may be presumed to know, or who is in a position to know, the truth, deliberately makes unqualified representations in respect to a material matter, in such manner as to import a knowledge by him of their truth, for the purpose of inducing another to act upon them, a similar inference may arise; and in such case, if a party has acted in reliance on such representations, he is entitled to maintain an action for the injury sustained thereby. But the question of fraudulent intent is usually one for the jury. *Meyer v. Amidon,* 23 Hun (N. Y.) 553; 2 Pomeroy Equity Jurisprudence, section 884; *Hazard v. Irwin,* 18 Pick. (Mass.) 96; *Page v. Bent,* 2 Metc. (Mass.) 371; 5 Wait, Actions & Defenses, 436; *Salisbury v. Howe,* 87 N. Y. 129; *Cowley v. Smyth,* 46 N. J. Law, 380 (50 Am. Rep. 432); *Humphrey v. Merriam,* 32 Minn. 197 (20 N. W. 138)."

Some courts have gone to the extent of holding that the presumption of intent is conclusive, if knowledge of the falsity of representation be shown, but such is not the rule adopted in the majority of jurisdictions, and it is not the rule in this state. The fact, therefore, that the intent to deceive may be presumed or inferred from defendants' knowledge of the falsity of representation does not eliminate it as an element from plaintiff's case, nor does it relieve him from the burden of proof thereon. The fact remains that before he can recover the jury must find, from the evidence as a whole, in the light of all the circumstances shown, that the defendants intended to deceive.

Turning to the instruction under consideration, it does

no more than to lay this burden upon the plaintiff. It does not emphasize this element, nor require it to be proved by any different or additional evidence than that relating to the falsity of the representations, and the knowledge thereof. If this instruction had stated the rule above indicated as to inference and presumption of intent, it would be quite complete. But this omission is not a ground of attack upon it, nor was any request made for the statement of such rule. We think, therefore, that this instruction does not afford a sufficient ground to justify a reversal of the judgment.

V. Instruction No. 2, as given by the trial court, was as follows:

If you find from the evidence and under these instructions that the defendants, or either of them, represented to the plaintiff that the land in question contained one hundred and twenty acres of good farming or tillable land, and that there were forty acres of hilly pasture land, and that they accompanied the plaintiff to view the land, and that plaintiff did view the land, but that in so viewing it he was shown land upon another quarter section and not the land in controversy; and you further find that the defendants stated, as a matter of act, that the land shown upon the other quarter section was a part of the land he was to purchase the relinquishment of; that such statements or representations were false; that such statement was made as a matter of fact and knowingly, and with the purpose and intent at the time to deceive the plaintiff; that plaintiff relied upon such statements and representations as to the location of the land; and you further find that he could not by reasonable care on his part have ascertained the location of the land; if you find these to be facts, and that plaintiff was damaged thereby, then your verdict will be for the plaintiff. But, if you fail to find as to any one of said elements, then your verdict will be for the defendants.

5. SAME: misrepresentations: knowledge of falsity: instruction.

Particular complaint is directed against the following

portion of the above instruction: "That such statement was made *as a matter of fact and knowingly,* and with the purpose and intent at the time to deceive the plaintiff." The proper construction to be put upon the sentence last quoted is not clear. In argument counsel for both parties construe this expression to mean that the plaintiff must prove that the defendants showed him a false boundary or location, and that they knew the falsity of such boundary or location. Quoting from appellee's argument: "It asked him to establish that he did not get the land that was shown him; that the defendants knew they were not showing him the land ultimately conveyed to him. . . . It must be remembered this is an action at law, and for deceit and misrepresentation intentionally made, and certainly knowingly made. We will admit, for the sake of argument, that the defendants knew they were showing him the wrong land, and the verdict of the jury was that the contention of plaintiff was not sound. . . . If, in fact, the statement as made concerning the location of the corner is believed to be true, and it turns out it is not, the person so making it is not liable, unless he knew the statements were untrue. . . ." Adopting this construction of the instruction, it was clearly erroneous as applied to the pleadings and evidence in this case.

It will be noted that the particular statement under consideration at this point in the instruction was that relating to the corner or east boundary of the land. The contention of appellant at this point, both by his petition and his evidence, was not that the defendants *knew the true boundary* and showed to the plaintiff a false one. It was that the defendant Steinhauser *stated to the plaintiff that he did know the true boundary,* and that so professing to know the true boundary, he pointed out to the plaintiff a false boundary. The contention of Steinhauser in evidence was that he did not himself know the true boundary, and that he only exercised and expressed his opinion as

to the boundary pointed out by him. The effect of the instruction as construed was to say that, if Steinhauser was ignorant of the true boundary and did not know the falsity of the boundary pointed out by him, the plaintiff could not recover. But this ignores entirely the assertion of knowledge which Steinhauser had made. If he asserted that he had knowledge of the true boundary and so asserting purported to point it out, such an assertion is binding upon him; all other elements. of the case being made to appear. In such a case it will not avail him as a defense to say that he did not know the true boundary, and that he pointed out a false boundary by a mistaken opinion. If he asserted knowledge of the true boundary when he knew that he had no such knowledge, this of itself was a false statement, made with knowledge of its falsity. If such statement was followed by the pointing out of a boundary false in fact, it is then immaterial whether he in fact knew such falsity or not. *Riley v. Bell,* 120 Iowa, 618; *Brewing Co. v. Peterson,* 130 Iowa, 305; *Evans v. Palmer,* 137 Iowa, 425. Steinhauser testified: "The place I showed him, what I thought was the east line of his quarter, was about ten rods east of the exact east line." The effect of the instruction was to give Steinhauser the benefit of his ignorance and mistake as to the boundary, even though he had induced belief, on the part of the plaintiff, by his previous assertion of knowledge on that question.

We have considered whether we could put upon the instruction at this point a different construction from that adopted by counsel for the parties. "That such a statement was made as a matter of fact" might be construed (1) that the statement referred to was in fact made, or (2) that the statement was made as a statement of fact, and not as an expression of opinion. The word "knowingly" in this connection might be construed as meaning (1) that Steinhauser knew that he made the statement as to the boundaries, or (2) that the truth or falsity of the

purported fact stated by him was within his knowledge, viz., that he knew whether the boundary pointed out by him was true or false. We think that the language used at this point in the instruction will not bear any other construction than such as are here suggested, or else the construction adopted by counsel which we have already considered. Whichever construction thus suggested might be adopted, the instruction deprives the plaintiff of the benefit of his allegation and evidence at this point. If we look beyond the language of the instruction, we are impressed that the probable intention of the court was to say that, if the jury found that the statement as to pointing out the boundary was made by Steinhauser as a statement of fact, within his actual knowledge, and not as a mere expression of opinion, then he would be bound by the falsity of the statement. The language of the instruction, however, fails in its expression of such thought, and we can not presume that the jury could have supplied the omission.

We can not avoid the conclusion that, from any point of view, the instruction was misleading. It was not necessary for the plaintiff to prove that Steinhauser knew the true boundary; it was sufficient if he proved that Steinhauser *professed* to know, and so professing pointed out to plaintiff an alleged boundary, with intent to deceive. The tendency of the instruction was to convey to the jury the idea that, if Steinhauser did not himself know the eastern boundary, he would not be liable for a mistake of opinion. However correct this might be as an abstract proposition of law, it was inappropriate and misleading in its application to the pleadings and evidence in this case.

Some other alleged errors are argued, but they are such as are not likely to arise on a new trial, and we will not deal with them. For the error above indicated in instruction 2, the judgment below must be *reversed*.