H. E. GRAY, Appellee, v. SHELL PETROLEUM CORPORATION, Appellant.

No. 40904.

JUNE 20, 1931.

Thompson, Mitchell, Thompson & Young, and A. E. Baldrige, for appellant.

Livingston & Eicher, for appellee.

KINDIG, J.—In December, 1927, the plaintiff-appellee, H. E. Gray, began selling for the defendant-appellant, Shell Petroleum Corporation, petroleum products at Washington, Iowa, from a tank delivery truck. Appellant employed appellee upon a commission basis. This business relationship existed between appellant and appellee until March 12, 1929.

On July 27, 1928, appellant audited the appellee's books and made an inventory of the stock in his possession. A shortage was alleged to have been found in the sum of $252.31. Following the audit, the appellee, on August 12, 1928, signed a note for the amount due appellant. For the purpose of securing payment of that note, the appellee, on October 26, 1928, made for appellant a written admission of the indebtedness and authorized the latter to retain $25.00 per month from the former's wages until the note was paid. Then, on February 1, 1929, another audit of appellee's books was made, and, as a result, a further shortage appeared in the amount of $318.26. Thereafter, on March 12, 1929, appellee met with three agents of the appellant at a hotel in Washington for the purpose of adjusting the last deficit. Upon that occasion, appellee signed a note for the last-named shortage, together with an instrument known as an authorization, an instruction to the Oil Company empowering it to retain all commissions due appellee and apply the same on the indebtedness. Also at that time appellee signed an agreement authorizing the appellant to sell his truck, used in the aforesaid employment, for the sum of $800 and apply the necessary portion thereof upon the unpaid notes. Accordingly, appellant sold the truck, and the purchaser thereof paid the said notes in full. Appellee ceased working for appellant.

Later appellee brought the present action against appellant to recover commissions due under the former employment, to-

gether with certain rentals on a garage used to store appellant's products.

By way of answer, appellant pleaded settlement as a defense to appellee's claim for the commissions, and interposed a general denial against the demand for the rentals. Thereupon appellee pleaded that the alleged settlement of the first shortage above-named was obtained by appellant through fraud, misrepresentations, and mistake, the theory of appellee being that the measuring stick (used by appellant to measure the oil in the tank) was not of the proper length, and therefore a shortage appeared when none in fact existed. Likewise, appellee pleaded that the second alleged settlement was the result of duress, mistake, and fraud. Duress, it is said, arose because appellant's agents told the appellee that if "he did not sign the papers demanded they would file charges of embezzlement against" him and would "have him jailed". Fraud arose, appellee again asserts, because of the false measuring stick.

The jury found for the appellee and against the appellant. Judgment was entered accordingly. Complaint is made by appellant because of the trial court's instructions to the jury.

█ I. It is said that the district court misguided the jury through its definition of duress. Furthermore, objection is made by the appellant because the trial court did not properly guide the jury in their consideration of the evidence relating to the alleged duress. Under his pleading relating to duress, appellee declared that appellant's agents "stated to the plaintiff (appellee) that if the plaintiff (appellee) did not sign the papers demanded by (the agent) he (the agent) would file charges of embezzlement against the plaintiff (appellee), that he (the agent) would have the plaintiff (appellee) jailed and that he (the agent) would compel plaintiff to do business (appellant's way). That the plaintiff (appellee) was without opportunity for legal advice, was overawed by the threats of said (agent), and under the influence thereof did sign papers and complete said purported agreement of settlement."

No other threats or charges were pleaded as the basis for the alleged duress.

During the conversation between the appellee and appellant's agents, at the time the last alleged settlement was made, there were "threats" other and different than those charged in

the pleading. To illustrate, appellant's agent in effect suggested or indicated that unless the settlement were consummated it would be necessary for the Oil Company to institute civil proceedings. Regardless of the fact that many statements were made of the kind and nature not named in appellee's pleading aforesaid, yet the district court permitted the jury to consider all "threats" and "statements" in the record. Manifestly, there was no attempt on the part of the district court to confine appellee's claim of duress to the matters set forth in his pleadings.

These are the instructions involved:

"8. On the question of duress, you may take into consideration the persons present, as shown, the threats, if any made, the effect the threats, if any made, and the statements the agents of the defendant company made, if any; and the statements as to having the plaintiff (appellee) arrested, if any, had on the plaintiff (appellee), and all other facts and circumstances, as shown by the evidence, in determining whether the plaintiff's (appellee's) free agency and freedom were overcome at the time he signed said writings and made settlement, and whether, at the time he delivered possession of the papers and property, he was under the continued influence of the alleged threats of defendant's (appellant's) agents, or whether the same was voluntarily and freely done." "9. You are instructed that the word 'duress' as used in these instructions, means compulsion or constraint by which a person is illegally forced to do or forbear some act."

A threat to collect a debt, even through civil proceedings, would not amount to duress. Chambers v. Irish, 132 Iowa 319 (local citation, 324). According to the instructions, however, the jury were told by the trial court that in determining whether or not there was duress, reference should be made to all the statements of appellant's agents without regard to the charge contained in the pleadings. Duress, if any there was, arose out of the "threat" to file charges of embezzlement against appellee and "have him jailed". Within the issues, no other threats could constitute duress. Of course, it was proper for the jury to consider all the facts and circumstances in the record, including the various statements of appellant's agents, for the purpose of determining whether or not duress existed through the "threats to file charges of embezzlement against and jail"

appellee. But such consideration of those statements, facts, and circumstances could not be for the purpose of finding duress in anything but the items specifically pleaded, as just explained. This conclusion is not inconsistent with Smith v. Blakesburg Savings Bank, 182 Iowa 1190, cited by appellee. Nothing in the Smith case indicates that the district court was not to confine the jury to the allegations of the plaintiff's petition. In the case at bar, the trial court not only neglected to confine the jury to the issues pleaded, but also failed to give them a sufficient definition of duress. During our discussion in Callendar Sav. Bank v. Loos, 142 Iowa 1, reading on pages 7 and 8, we approved the following statement made by Marshall, J., in Galusha v. Sherman (Wis.), 81 N. W. 495:

"From the foregoing it will be seen that the true doctrine of duress, at the present day, both in this country and England, is that a contract obtained by so oppressing a person by threats regarding his personal safety or liberty, or that of his property, or of a member of his family, as to deprive him of the free exercise of his will and prevent the meeting of minds necessary to a valid contract, may be avoided on the ground of duress, whether the oppression causing the incompetence to contract be produced by what was deemed duress formerly, and relievable at law as such, or wrongful compulsion, remediable by an appeal to a court of equity. The law no longer allows a person to enjoy, without disturbance, the fruits of his iniquity, because his victim was not a person of ordinary courage, and no longer gauges the acts that shall be held legally sufficient to produce duress by any arbitrary standard, but holds him who, by putting another in fear, shall have produced in him a state of mental incompetency to contract, and then takes advantage of such condition, no matter by what means such fear be caused, liable at the option of such other to make restitution to him of everything of value thereby taken from him."

Returning now to the language of our own decisions, the following declaration will be found in Kaus v. Gracey, 162 Iowa 671, reading on page 676:

"If threats be made which are of such nature as to oppress the person, and such threats relate to his personal liberty or safety, or deprive him of the free exercise of his will, and pre-

vent the meeting of minds necessary to a valid contract, the act may be void on the ground of duress.''

.There may be duress of property as well as of the person. Myers v. Watson, 204 Iowa 635. Here, however, appellee claims duress not of property, but of the person. Hence, so far as material under the pleadings, the definitions in the Galusha and Kaus cases, supra, should have been embodied in the district court's instructions to the jury.

Because the trial court did not confine the issue of duress, as above defined, to the allegations of appellee's petition, there was prejudicial error.

II.   Objection is also made because the district court did not state to the jury the essentials of fraudulent representations, although requested so to do by appellant.   Appellee claims, as before stated, that appellant fraudulently represented the existence of the shortage. A shortage did not exist, appellee asserts, because of the defective measuring stick, certain evaporations, etc.

When instructing the fact finding body upon this issue, the district court stated the proposition briefly and abstractly, without elaboration or definition.   A requested instruction upon this subject-matter was duly presented to the trial court.   Upon many occasions, we have said that fraudulent representations as a basis for a law action, require the establishment of the following elements:   ''Representation, falsity, scienter, deception, injury.'' Rawleigh Co. v. Cook, 200 Iowa 412; Andrew v. Darrow Trust & Savings Bank, 205 Iowa 244; Reinertson v. Consolidated Chemical Products Company, 205 Iowa 417; Bockes v. Union Mutual Casualty Co., 212 Iowa 499.   Under proper circumstances, scienter may be implied.   Baker v. Bockelman, 208 Iowa 254; Davis v. Central Land Co., 162 Iowa 269; Dilenbeck v. Davis, 186 Iowa 30 (local citation, 45 and 46) ; Smith v. Packard & Co., 152 Iowa 1.   Such implication may be present if one makes an assertion as of his own personal knowledge regardless of the truth.   As said in Baker v. Bockelman (208 Iowa 254), supra, reading on page 258:

''It is the settled law in Iowa that one who asserts as a fact, without qualification, something that he does not know to be true, asserts, by implication at least, that the thing asserted is

of his own knowledge, and true; and he is not permitted, as against one to whom the representation is made, as an inducement to act, and who is thereby induced to act, to thereafter assert that he did not know his statement to be false.''

The jury should have been fully instructed in reference to the law applicable to the false representations charged and supported by evidence in the case at bar. So, upon a rehearing, the district court should instruct the jury upon the facts then presented according to the law stated in the foregoing authorities.

III. It is to be remembered that the appellee sought to recover not only the commissions aforesaid, but also $130 for the rental of a certain garage. A general finding was made by the jury.

Careful attention has been given to appellant's errors assigned, and it is obvious that there should be no reversal so far as these rentals are concerned.

Wherefore, because of the errors pointed out under Propositions I and II, the judgment of the district court must be reversed unless the appellee is willing to remit everything except a judgment for $130. If the appellee, therefore, within thirty days after a procedendo in this case is filed with the clerk of the district court, shall file with the latter clerk a remittitur to the extent named, then the judgment of the district court will be affirmed; otherwise reversed.

Hence, the judgment of the district court is affirmed on condition.—Affirmed on condition.

ALBERT, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.