JAMES CONARD, appellant, v. AUTO-OWNERS (Mutual) INSURANCE COMPANY and LOUIS FORRET and ORVILLE A. REICH, a partnership, d/b/a FORRET & REICH AGENCY, appellees.

No. 50640.

(Reported in 117 N.W.2d 53)

SEPTEMBER 18, 1962.

Gamble, Read, Howland, Gamble & Riepe, by B. A. Webster, Jr., of Des Moines, for appellant.

Charles Bookin, of Ottumwa, for appellee Auto-Owners (Mutual) Insurance Company.

Duncan, Jones, Hughes, Riley & Davis, of Des Moines, for appellees Louis Forret and Orville A. Reich.

THORNTON, J.—Plaintiff, an operator of a trucking line, brings this suit in equity to reform a liability insurance policy as against defendant insurance company, and in the alternative for damages against the defendants, Forret & Reich, the selling insurance agents. Plaintiff bases his case upon a telephone call wherein he inquired of Mr. Reich, one of the partners of the insurance agency, if he was covered in the event a salesman or somebody went out the door and coming up the steps fell down and broke their leg or anybody on the dock got hurt. Plaintiff states Mr. Reich said that his policy did cover it. In fact there

was no such coverage. This conversation took place December 2, 1957.

During December 1957 defendant insurance company, through defendant agents, issued and delivered to plaintiff, three renewal policies effective January 1, 1958, for one year. These policies were identical to the prior ones, one was a fleet or truck liability policy, one cargo liability, and a workmen's compensation policy. Plaintiff canceled the cargo policy and the workmen's compensation policy during the month and placed that coverage in another company through another agent. The fleet or truck liability policy is the one asked to be reformed. The trial court denied plaintiff relief and he appeals.

Plaintiff has operated a truck line since 1947. From 1947 to 1954 plaintiff purchased his insurance from defendant agents in a company other than defendant company. In September 1954 Mr. John Bain, an insurance agent, called on plaintiff. The extent of the conversation at that time is not definite. But it is clear plaintiff was alerted to lower insurance rates. He called on defendants Forret & Reich for the purpose of obtaining less costly rates. As a result, plaintiff's insurance, consisting of three policies, one covering plaintiff's liability on his trucks, called a fleet policy in the record, this policy also covered collision, fire and theft, one covering plaintiff's cargo liability, and the third covered plaintiff's workmen's compensation liability, was placed by defendant agents with defendant insurance company. One of the agents, Mr. Reich, testified that at the same time he discussed with plaintiff a schedule liability policy, this type of policy is also referred to in the record by all parties as a general liability policy and a premises liability policy. But plaintiff did not purchase it because it cost too much. Plaintiff testified he did not recall any such conversation and that he did not know what general liability insurance was until in December 1957. Defendant agents had no further contact with plaintiff for the purpose of selling him insurance until after the occurrence for which recovery is sought here. They did have numerous telephone calls from him reporting accidents and losses under the policies. In 1955 and 1956 Mr. Bain called on plaintiff shortly before the time for the renewal of the policies. The testimony of the extent of the

discussions relating to general liability insurance of Mr. Bain and plaintiff conflicts with Mr. Bain's statement taken before trial and plaintiff's discovery deposition. When Mr. Bain called on plaintiff December 2, 1957, he examined plaintiff's policies and told plaintiff he did not see general liability coverage in the policies. At that time Mr. Bain referred specifically to a salesman or somebody, not an employee, being injured on plaintiff's dock. Plaintiff, in the presence of his bookkeeper, an office girl, and Mr. Bain, called defendant insurance agent Mr. Reich and asked him if he, plaintiff, was covered in the event, "a salesman or somebody went out the door and coming up the steps fell down and broke their leg or anybody on the dock got hurt they could sue me." He testified Mr. Reich told him his policy covered a case such as that. Mr. Reich denies this conversation took place. Shortly thereafter, as was the custom, the renewal policies were mailed to plaintiff. The record does not show plaintiff ever actually signed an application. He paid for the truck policy and canceled the others. The others were placed with Mr. Bain's company. The reason, according to plaintiff, was price. As to the policy he kept, plaintiff testified:

"They just sent me the policy and the statement for the premium and I paid it. I believed it was exactly like the policy which I have just said Mr. Reich stated would be premises liability. Upon receipt of that policy I did not read it over or examine it."

In February 1958 Mr. Wilson, a driver for another trucking firm, was injured on plaintiff's dock. Plaintiff did not report this occurrence to defendant agents. He says he did not see where he had any liability. He thought workmen's compensation insurance carried by Mr. Wilson's employer would take care of it. In August 1958 Mr. Wilson sued plaintiff. When the original notice was served on him plaintiff called defendant agents. He was told to hold on to the papers and they would have a man pick them up. Within a few days an adjuster for defendant company contacted plaintiff and then advised him his policy did not cover the Wilson injury. After being so advised plaintiff employed counsel to defend. He called Mr. Bain to obtain general liability insur-

ance. Mr. Bain advised him to place it with the agents carrying his other liability insurance. He then called defendant agents and ordered general liability insurance. Plaintiff did not tell the adjuster he had or thought he had insurance covering his liability for the Wilson injury. He did not complain to defendant agents when he ordered the general liability policy; nor did he tell his attorney on his first visit to him that he was under the impression he had insurance. Plaintiff states he had forgotten the December 2, 1957, conversation with Mr. Reich. He was reminded of it by Mr. Bain in a telephone call a few days after his call to Mr. Bain for insurance. Thereafter, plaintiff through his counsel made a demand on defendant insurance company to defend. This was refused. Judgment ran against plaintiff in the Wilson suit. He seeks to recover the amount of the judgment and the cost of defense.

The trial court held the December 2, 1957, telephone conversation between plaintiff and defendant Mr. Reich did take place. But it also held that there was no reliance on such representation, and that plaintiff knew at all times that he did not have general liability insurance. On this basis reformation was denied because there was no mistake on plaintiff's part and relief against defendant agents was denied because plaintiff did not rely on the agent's statement. We agree with this result.

I. In equity cases such as this, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but we are not bound thereby. Our duty is to review the case de novo; we cannot abdicate our function as triers of fact.

II. To entitle plaintiff to the relief of reformation of the insurance policy it is necessary to show a mutual mistake, or to show a mistake on the part of one party and fraud or inequitable conduct on the part of the other, that the policy as written does not express the agreement of the parties. Baldwin v. Equitable Life Assurance Society of the United States, 252 Iowa 639, 642, 648, 108 N.W.2d 66, 68, 72, and citations; and Mortenson v. Hawkeye Casualty Co., 234 Iowa 430, 12 N.W.2d 823. And to entitle plaintiff to damages under the pleadings against de-

fendant insurance agents, Forret & Reich, it is necessary to show in equity, as in law, the elements of fraud, representation, falsity, scienter, deception, and injury. Hubbard v. Weare, 79 Iowa 678, 44 N.W. 915; Smith v. Packard & Co., 152 Iowa 1, 5–7, 130 N.W. 1076, 1077, 1078; Reinertson v. Consolidated Chemical Products Co., 205 Iowa 417, 420, 216 N.W. 68, 69; and Gray v. Shell Petroleum Corp., 212 Iowa 825, 830, 237 N.W. 460, 463. Scienter may be shown by showing the statements made were as of knowledge by one in a position to know or one in a position that it was his duty to know as to the truth or falsity of the representation, in other words, by representations recklessly made. Hubbard v. Weare, 79 Iowa 678, 686, 44 N.W. 915, 917; Richards & Comstock v. Fredrickson, 171 Iowa 669, 674, 675, 153 N.W. 151, 153; Davis v. Central Land Co., 162 Iowa 269, 275, 143 N.W. 1073, 1075, 49 L. R. A., N. S., 1219; Baker v. Bockelman, 208 Iowa 254, 258, 225 N.W. 411, 413; Gray v. Shell Petroleum Corp., 212 Iowa 825, 830, 237 N.W. 460, 463; Hills Savings Bank v. Cress, 205 Iowa 306, 312, 218 N.W. 74, 77; and Equitable Life Ins. Co. of Iowa v. Halsey, Stuart & Co. (7th Cir. 1940), 112 F.2d 302.

 III. Proof by clear, satisfactory and convincing evidence is necessary before plaintiff may be granted reformation or damages for fraud. There is sufficient evidence the telephone conversation of December 2, 1957, did take place.

 IV. Plaintiff's case turns on his reliance on the statement of coverage made to him by defendant agent Mr. Reich. To make out a case of mutual mistake or mistake on his part and inequitable conduct on defendant's part necessary for reformation, plaintiff must show he relied on defendant agent's statement. His question and Mr. Reich's answer are the only bases for an agreement. This is also true of his case for damages against defendant agents. If he did not rely on the statement he was, of course, not deceived. In both instances the evidence must be clear, satisfactory and convincing.

The only evidence consistent with reliance is plaintiff's testimony that he thought the policy was just like the one Mr. Reich had told him covered premises liability, and plaintiff's telephone call to the agents after notice of Mr. Wilson's action was served

on him. On the other hand, we believe the following actions by plaintiff are wholly inconsistent with reliance. In December 1957 when plaintiff received the three renewal policies from defendants he kept the truck policy and canceled the other two. According to his own statement he did not read the policy. He also states that before the December 2, 1957, telephone conversation he did not know what general or premises liability insurance was. In no way or manner did plaintiff refer to the fleet or truck policy in the telephone conversation, nor did defendant Mr. Reich. For one who had no prior knowledge, or one who had so recently acquired knowledge, we are at a total loss to determine how he made the decision to cancel two policies and keep the one. How did he determine the fleet or truck policy was the one to which Mr. Reich and he referred in the telephone conversation? We will agree that of the three policies the fleet or truck policy appears the most likely to include such coverage. But this can hardly help plaintiff. The only fair inference is he relied on his own knowledge or someone other than defendant agents. The basis for an agreement therefore fails as does the element of deception necessary to prove fraud.

In addition, plaintiff in his discovery deposition was asked, "You didn't feel your truck policy covered the event, did you?" He answered, "No." He did not report the occurrence. And after he was served with notice he did not complain about the refusal of defendant company to defend, nor did he claim he should have been covered to the adjuster, Mr. Reich, or his own counsel, until after he was reminded of the conversation. That plaintiff might have forgotten the particular conversation is not unusual, but that he apparently had no impression he was covered is. The evidence of reliance does not meet the required degree of proof. The decree of the trial court must be and is hereby—Affirmed.

All JUSTICES concur.