**Harry DETRICK and Nellie Detrick, Appellants,**

v.

**AETNA CASUALTY AND SURETY COMPANY, an Insurance company, and Harold W. Higgs, d/b/a Hal Higgs Insurance, Appellees.**

No. 52882.

Supreme Court of Iowa.

April 9, 1968.

Lee H. Gaudineer, Jr., Des Moines, for appellants.

Eugene Davis, Des Moines, for appellees.

SNELL, Justice.

This action reviewable de novo on appeal involves plaintiffs' claims for benefits under the "Uninsured Motorist" coverage provided by an automobile liability insurance policy issued to plaintiffs by Aetna Casualty. Defendant Aetna Casualty declined to pay because the motorist who had caused the injuries was not "uninsured."

Plaintiffs' petition sought a declaratory judgment that they were entitled to benefits, and a money judgment. Plaintiffs also sought reformation of the policy, based on alleged mutual mistake or on the basis of what "public policy" requires. If the foregoing relief were denied, they sought damages against Aetna's agent, Hal Higgs, for allegedly misrepresenting the coverage.

In the trial court all issues were resolved in favor of the defendants.

This appeal presents the question of the meaning of the policy, and the correctness of the trial court's findings that plaintiffs had not established grounds for reformation or for damages resulting from misrepresentation.

Plaintiffs are husband and wife.

Defendant Aetna Casualty and Surety Company, is an insurance company duly licensed to do business in Iowa. Defendant Harold W. Higgs, d/b/a Hal Higgs Insurance, is an individual residing in Des

Moines, Iowa, who at all times material hereto was engaged in the general insurance agency business, and sold insurance for several insurance companies, including Aetna.

On December 3, 1960, defendant Aetna issued a policy of insurance to plaintiffs, pursuant to plaintiffs' written application therefor which provided coverage for a 1959 Ford automobile. This policy was replaced by the policy involved herein dated September 3, 1963, providing similar coverage. We reproduce the original application.

---

**DECLARATIONS**     **AUTO-RITE POLICY**     **THE ÆTNA CASUALTY AND SURETY COMPANY**

Item 1. Named Insured and Address (No., Street, Town, County, State)
NELLIE L. DETRICK
4588 E. OAKWOOD DRIVE
DES. MOINES, POLK, IOWA

Policy Number (Includes all digits at right): Branch Code 20 – Agent's Code 3630 – 12,08,60 – Control Date 3116
Policy Period: From 12,3,60 To 3,03,63
Agent's Name HAT H,663 INS

Loss Payee: As stated in Condition 12, any loss under Part II is payable as interest may appear to the named insured and: (Show name and address of Lienholder)
#1 CHASE INVESTMENT CO. & Tr Aven Ind.

| | Down Payment | Due Date Final Pay. | State | Territory Code City | County | Rate Terr. |
|---|---|---|---|---|---|---|
| | $ | | 14 | 00 | 77 | 08 |

Item 2. Rating Class and Description of Owned Automobile:

| Auto | Rating Cl. | Year, Trade Name, Body Type, Ident. Number, Model | Symbol | Actual Cost | Age | For Home Office Use Only |
|---|---|---|---|---|---|---|
| 1 | 1A-O | 59 FORD COUNTRY SED. A9PR101314 | 4 | | 6 | N |
| 2 | 2A-O | 59 CHEV CONV. J456V59J163371 | | | | |

Driver Class Code 17-1112 24-1212

Item 3. The insurance afforded is only with respect to such of the following coverages or groups of coverages as are indicated herein by an "X" opposite the applicable limit of liability. The limit of Ætna Casualty's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Part I | COVERAGES AND LIMITS OF LIABILITY | | | | Part II | COVERAGES AND LIMITS OF LIABILITY | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Code | Liability | Medical Expense | Accidental Death Benefit | Uninsured Motorists | Auto 1 2 | Code | Comprehensive* | Auto 1 2 | Code | Collision |
| 2 | $ 25,000 | $1,000 | $1,000 | $20,000 | X | 04 | Actual Cash Value | | 85 | $50 Deductible |
| 5 | $ 50,000 | $2,000 | $1,000 | $20,000 | | 05 | Actual Cash Value less $50 Deductible | X | 86 | $100 Deductible |
| 6 | $100,000 | $3,000 | $1,000 | $20,000 | | | *Includes $200 Personal Effects and $25 Towing and Labor Costs. | | | |
| 7 | $200,000 | $4,000 | $1,000 | $20,000 | | | | | | |
| 8 | $300,000 | $5,000 | $1,000 | $20,000 | | | | | | |
| | Each Occurrence | Each Person | Each Named Insured | Each Accident | | | | | | |

(X marked at Code 8)

**QUARTER-ANNUAL PREMIUM SCHEDULE**

| Auto | Part I | Part II Comp. | Collision | Sub-Total | Total Premium |
|---|---|---|---|---|---|
| 1 | $ 8.00 | $ 6.00 | $ 6.00 | $ 20.00 | 35.00 |
| 2 | $ 15.00 | $ | $ | $ 15.00 | |

Endorsements Auto 1     Auto 2

Item 4. Unless otherwise stated herein, the automobile(s) described in Item 2 above is (are): (a) Solely owned by the named insured, subject to the interest of any lienholder therein; (b) Principally garaged in the town stated in Item 1 above.

Item 5. Application for Insurance (Check applicable blocks, explain "yes" answers in detail under Remarks:)

1. In the past 2 years have you or any operator in the household
   a. had insurance cancelled, declined or renewal refused? Yes [ ] No [X]
   b. had your driver's license suspended or revoked? Yes [ ] No [X]
2. Does any operator have any mental or physical impairments? Yes [ ] No [X]
3. Has address changed in last 6 months? (show previous address) Yes [ ] No [X]
4. Name of previous insurer, if any: EMPLOYERS
5. Insured's Occupation: HOMEMAKER
6. Estimated annual mileage: Auto 1 12,000 Auto 2 15,000

| Names of all drivers in household | Driver's Lic. Number | Age | Sex | Married Yes No | Yrs. Lic. | % of Use | Driv. Train. |
|---|---|---|---|---|---|---|---|
| Applicant | | 47 | F | ✓ | | | |
| SHERY | | 51 | M | ✓ | | | |
| RONALD | | 21 | M | ✓ | | | |
| BARBARA | | 18 | F | ✓ | | | |

Remarks: (Indicate Number of Question Being Answered) Def's Ex. #A

7. Statement of Convictions: Has the applicant or any other driver in the household been convicted of a moving traffic violation as a result of operating any private passenger or utility automobile during the 2 year period ending 3 months prior to the effective date of the policy? [ ] yes [X] no (If "yes" answer below.)

| Name | Violation | Date and Place of Conviction |
|---|---|---|
| | | |

8. Statement of Accidents: Has the applicant or any other driver in the household been involved in an automobile accident while operating any private passenger type automobile, resulting in damage to any property, including his own, in excess of $50.00 or in bodily injury or death during the 2 year period ending 3 months prior to the effective date of the policy? [ ] yes [X] no (If "yes" answer below.)

| Date of Accident? | Loc. of Accident? | Bod. Inj. or Death? | Damage to Property? |
|---|---|---|---|
| | | | |

9. If the answer to any of the following is "yes" insofar as they involve the applicant, person residing in the household or owner of the automobile being used, so state and give Date of Accident.

| | Yes | Date of Accident |
|---|---|---|
| a. Automobile lawfully parked. | [ ] | NE |
| b. Automobile struck in rear end and applicant or person residing in household was not convicted. | [ ] | |
| c. Reimbursed by, or in behalf of, person responsible for the accident or have judgment against such person. | [ ] | |
| d. Other person involved in accident was convicted. Applicant or person residing in household was not convicted. | [ ] | |
| e. Damage by "hit-and-run" driver and accident reported to police within 24 hours from time of accident. | [ ] | |

I have read the above declarations and the rating statement on the reverse side and I declare that to the best of my knowledge and belief all of the foregoing entries are true and that the rating class entered above is correct.

Signature of Insured: Nellie Detrick     Countersigned by _____ Date 12,01,60

(13206-1) Section 2C This Declarations Page, with "Policy Provisions—Section 1" Form 13202, completes the above numbered Auto-Rite Policy.

We reproduce the declaration sheet attached to the replacement policy.

**AUTO-RITE POLICY
DECLARATIONS**

**THE ÆTNA CASUALTY AND SURETY COMPANY**
Hartford, Connecticut

**This declarations page, the endorsements, if any, and the policy form to which it is attached replaces the policy previously issued by Ætna Casualty under the same number, effective on the date indicated below, provided the premium therefor has been paid on or before such date.**

| (Item 1) NAMED INSURED AND ADDRESS | AGENT'S NAME | HAROLD W HIGGS |
|---|---|---|
| N L DETRICK 4588 E OAKWOOD Dr. DES MOINES IOWA | POLICY NUMBER (all digits at right) | 20 3630 12-03-60 3116 |
| | POLICY PERIOD — Quarter-annual period commencing and, subject to the consent of Ætna Casualty, for successive quarter-annual policy periods as provided in Condition 1. | 09-03-63 |

The insurance afforded is only with respect to such of the following coverages or groups of coverages as are indicated herein by a specific premium charge or charges. The limit of Ætna Casualty's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| RATING CLASS AND DESCRIPTION OF OWNED AUTOMOBILE (Item 4) | | | | QUARTER - ANNUAL PREMIUM SCHEDULE | | | |
|---|---|---|---|---|---|---|---|
| Auto | Rating Class, Year, Trade Name | | Auto | Part I | Part II COMP. | COLL. | Total |
| 1 | 1A-0 59 FORD | | 1 | $9.00 | $5.00 | $5.00 | $19.00 |
| 2 | | | 2 | | | | |

| AUTO | PART I - COVERAGES AND LIMITS OF LIABILITY | | | | PART II - COVERAGES AND LIMITS OF LIABILITY | |
|---|---|---|---|---|---|---|
| | LIABILITY (Each Occurrence) | MEDICAL EXPENSE (Each Person) | ACCIDENTAL DEATH BENEFIT (Each Named Insured) | UNINSURED MOTORISTS (Bodily Injury) (Each Accident) | COMPREHENSIVE Actual Cash Value, less DEDuctible | COLLISION Actual Cash Value, less DEDuctible |
| 1 | $300,000. | $5,000. | $1,000. | $20,000. | NO DED. | $100 DED. |
| 2 | | | | | | |
| Endorsements | | | | | | |

If an asterisk (*) appears after the stated Liability Coverage limits, the amounts stated are the limits of liability, in thousands of dollars, applicable respectively to (1) each person and (2) each occurrence for Bodily Injury Liability, and to (3) each occurrence for Property Damage Liability. For example, $10/20/5 would mean:

(1) $10,000 each person } Bodily Injury Liability     and (3) $5,000 each occurrence     Property Damage Liability
(2) $20,000 each occurrence }

LOSS PAYEE: As stated in Condition 12, any loss under Part II is payable as interest may appear to the named Insured and (Name and Address of lienholder):
CAR 1 CHASE INVESTMENT CO

By acceptance of this replacement policy and payment of the premium therefor, the named Insured declares that the statements in the declarations are true to the best of his knowledge and belief and agrees that the policy is continued in force in reliance upon the truth of the representations heretofore made by the named Insured in applying for and renewing this insurance.

Countersigned by *Harold W. Higgs*

SECTION 2—This Declarations Page, with "Policy Provisions-Section 1" Form 13202 (Rev. 1/1/63), completes the above numbered Auto-Rite Policy.

(13490)

---

This policy was called an "Auto-Rite" policy. It provided coverage of $300,000 liability for each occurrence, medical expense coverage of $5,000 to each person, accidental death benefits of $1,000 to each named insured, and uninsured motorists coverage of $20,000 for each accident. The limits of coverage for liability and uninsured motorists were of the "level" type imposing a maximum of $300,000 and $20,000

respectively regardless of whether one person or more than one person is entitled to receive benefits thereunder.

The coverage provided as protection against uninsured motorists is stated in part 1 of the policy as follows:

"Protection Against Uninsured Motorists Coverage. Aetna Casualty will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle * * *."

The term "uninsured highway vehicle" is defined in the policy as follows:

"(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the Financial Responsibility Law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder, or

"(b) a hit-and-run vehicle."

On October 5, 1963, Harry Detrick was driving the 1959 Ford insured under the policy when he was involved in an accident with a vehicle driven by one Mary Sullivan. Harry Detrick sustained serious injuries, resulting in damages in excess of $20,000. It is admitted that Mary Sullivan was legally liable for such accident and the damages sustained by Harry Detrick.

Mary Sullivan had a policy of automobile liability insurance with Employers Mutual Casualty Company. The limit of liability for bodily injury specified in her policy was equal to the amount specified by the Iowa Financial Responsibility Law—$10,000 for injury to one person.

Employers Mutual paid its full policy limits ($10,000.00) to Harry Detrick, who executed a covenant not to sue Mary Sullivan, but retained his rights against Aetna.

Plaintiffs claimed a policy ambiguity by referring to the "other insurance clause." The language relied on refers to a situation where the insured has a second policy and has no application here.

The trial court found:

"The 'other insurance' clause is not applicable under the facts of this case."

Plaintiff Nellie Detrick testified that she wanted and thought she was buying insurance that would provide up to $20,000 in event of injury by another motorist.

■ The trial court found:

"The plaintiff Nellie Detrick and defendant Hal Higgs each testified that they had a conversation regarding the coverage provided by the policy before the same was originally purchased by plaintiff. It appears from plaintiff's testimony, and the court so finds, that plaintiff Nellie Detrick was primarily concerned at the time with securing some sort of insurance protection in case she or members of her family should be involved in an automobile accident with another driver who had no liability insurance. The court finds that the version of the conversation testified to by defendant Higgs is credible and convincing, and that the uninsured motorists coverage was fully and correctly explained to plaintiffs by defendant Higgs, to-wit: That payments would be made thereunder by the Aetna only if the other driver had no liability insurance, or was a hit-and-run driver."

Mrs. Detrick testified that she relied on Mr. Higgs and did not read her policy. (A not uncommon situation.) She may have not correctly understood what she was buying but she makes no claim that anything

was ever intentionally misrepresented to her. With commendable honesty she testified: "I don't think Hal Higgs would intentionally lie to anybody."

We continue from the trial court's findings:

"Plaintiffs have failed to establish by the required degree of proof that the parties made a mutual mistake as alleged in Count II of the Petition, that the language of the insurance contract is 'against the public policy of this state' as alleged in Count III, or that defendant Higgs was guilty of false, reckless or fraudulent statements as alleged in Count IV of the Petition."

The trial court also found:

"The policy issued to plaintiffs by Aetna is not ambiguous. It is clear that Mary Sullivan was not the operator of an 'uninsured highway vehicle.' Therefore, plaintiffs have failed to sustain their burden of proving that defendants' Exhibit 1 provided any coverage to them under the uninsured motorists coverage or otherwise as a result of this accident."

■ We agree with the findings of the trial court.

I. Plaintiffs here are the unfortunate victims of an anomaly. Whether such a situation has ever been contemplated in the buying and selling of insurance we do not know. Plaintiffs would have been better off financially had the injury been caused by a motorist with no insurance. This situation, however, does not authorize us to write into the insurance contract something that is not there. The policy covers injuries caused by an uninsured motorist. It does not cover under insurance. It is a "level" type policy wherein the maximum liability of the company is fixed regardless of how many persons might be entitled to receive benefits.

■ The terms "automobile liability insurance", "insured" and "uninsured" are words of common meaning and understanding in accord with dictionary definitions. "Automobile liability insurance" is defined in Webster's Third New International Dictionary as "insurance against loss from or legal liability for damages arising out of ownership, maintenance, or operation of a motor vehicle." "Underinsurance" means "insurance in an amount insufficient to cover the possible loss or to satisfy the requirements of a coinsurance clause." "Insured" means "the owner of a policy of insurance." "Un" is a prefix meaning "not."

Mary Sullivan was the owner of a policy of liability insurance. She was insured in the amount required by our Motor Vehicle Financial Responsibility Law. (Section 321A.1(10), 1966 Code of Iowa)

■ We find nothing ambiguous in the use of the words in the policy nor in the provisions thereof. Mary Sullivan was not uninsured nor underinsured within the requirements of the statute. We find no authority authorizing us to define the word "uninsured" to mean underinsured in relation to plaintiff's injury.

In Mallinger v. State Farm Mutual Automobile Insurance Company, Inc., 253 Iowa 222, 226, 111 N.W.2d 647, we quoted from Field v. Southern Surety Co., 211 Iowa 1239, 235 N.W. 571, as follows:

"The general rule is that a policy of insurance must be construed most favorably to the insured, but this rule applies only when there is a real ambiguity in the language of the policy. If the words used in the policy are plain and unambiguous, it is the duty of the court to give effect to such language in accordance with its plain and ordinary meaning, and not make a new contract for the parties by arbitrary judicial construction."

In the special concurrence this appears:

"Policies written and sold to the public should not require the services of an expert in semantics to determine coverage."

It is well settled and a matter about which there is no argument here that if an insurance policy is susceptible to two different constructions or is ambiguous, that construction is to be placed upon it that will inure to the benefit of the insured. Before we can apply that rule we must find some ambiguity.

Here, however, we are able to find only one possible construction and we find no ambiguity.

■ "Uninsured" in its common meaning means not insured. Under our Financial Responsibility Law Mary Sullivan had financial responsibility (insurance) as required.

II. Matters that are not germane to the problem before us should be kept in mind.

This is not a case wherein plaintiff seeks double recovery. It is not a case where defendant company is relying on an escape clause or exclusion provision. There is no dispute as to plaintiffs' damage. There are no questions involving the policy provisions as to "other insurance," "reduction of maximum benefits", "pro rata" or "excess liability", except for plaintiffs' claim that they create ambiguity. We have said in Division I, supra, that we find no ambiguity.

The sole question is whether the situation here is covered by the insuring provisions of the policy. We agree with the trial court that there is no coverage here.

■ While this case is reviewable de novo the findings of the trial court "especially when considering the credibility of witnesses", are entitled to weight. Rule 344(f)7, Rules of Civil Procedure.

Here the trial court in considering the evidence found "that the version of the conversation testified to by Defendant Higgs is credible and convincing * * *."

We finding nothing in the record to overcome the trial court's findings.

■ III. To entitle plaintiffs to the relief of reformation of the insurance policy it is necessary to show a mutual mistake or a mistake on the part of one party and fraud or inequitable conduct on the part of the other and that the policy as written does not express the agreement of the parties. Conard v. Auto-Owners (Mutual) Insurance Company, 254 Iowa 157, 161, 117 N.W. 2d 53.

The case before us fails to meet the requirements for reformation.

■ IV. The public policy of our state has been stated by the legislature in chapter 321A of our Code. Under this law insurance with a limit of $10,000 liability to one person constitutes compliance. The policy of insurance before us recognizing, as it does the statutory provisions, does not violate the public policy of the state.

■ V. Appellants' alternative cause of action against defendant appellee Harold W. Higgs is based on pronouncements in Conard v. Auto-Owners (Mutual) Insurance Company, supra, cited by both parties. On pages 161 and 162 of the Iowa Reports, 117 N.W.2d on page 55, this appears:

"And to entitle plaintiff to damages under the pleadings against defendant insurance agents, Forret & Reich, it is necessary to show in equity, as in law, the elements of fraud, representation, falsity, scienter, deception, and injury." (Citations)

The statement in Conard, just quoted, as to necessary elements in fraud cases is correct but the means of establishing them is not the same in equity as in law. In equity the rules are less strict.

In Hall v. Wright, Iowa, 156 N.W.2d 661, an action at law grounded on actual fraud, we said:

"Each and every one of the following elements must be established by a preponderance of the evidence that is clear, satisfactory and convincing—such as to overcome the presumption in favor of fair dealing: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6)

reliance (7) resulting injury and damage." (Citations)

■ The form of remedy as factor affecting essential elements is stated in 37 C.J.S. Fraud § 4, as follows:

"The essential elements of fraud are, as a rule, not controlled by the fact that the action is at law or in equity or by whether fraud is asserted as a cause of action or as a defense, although equity will grant relief in some instances where it would ordinarily be refused at law, as, for example, where a scienter is not present or there has been no pecuniary damage.

"The same elements are necessary and sufficient to constitute fraud available as the basis of a suit for damages, whether the suit is at law or in equity; and the same is true of fraud as the basis of a suit for damages and of fraud as the basis of an estoppel. * * *

"However, the converse of the rule that what amounts to fraud in law constitutes fraud in equity is not in all instances true, since the equitable theory of fraud is more comprehensive, and while an innocent misrepresentation may be insufficient to sustain a tort action for deceit it may be sufficient to sustain an action for rescission or for general equitable relief. * * * *"

In 37 Am.Jur.2d, Fraud and Deceit, § 326, this appears:

"There is a distinction between relief, either affirmative or defensive, in a court of equity, on the ground of fraud, and the remedy for fraud in a court of law. Although the jurisdiction of the two courts is almost equal in their right to try and determine questions of fraud, their means of proving the fraud are not equal, and their modes of granting relief are widely different. It is well settled that in exercising jurisdiction to correct the effects of fraud, a court of equity is not confined to the rules acted upon by a court of law, but may act upon rules which go beyond the rules of

law. The remedy in equity is frequently more beneficial than that at law. * * * Furthermore, although whatever amounts to fraud according to the legal conception is also fraud in the equitable conception, the converse of this statement is not true. The equitable theory of fraud is much more comprehensive than that of the law and contains elements entirely different from any which enter into the legal notion. Equity may construct a fraud from the circumstances, whereas the law must find it as a fact."

In the case before us plaintiffs allege actual fraud on the part of defendant Higgs in these words:

"That by virtue of the false and reckless statements and representations of the Defendant, Harold W. Higgs, d/b/a Hal Higgs Insurance, which he knew or should have known to be false and upon which he intended the Plaintiffs to reply or should have known they would rely, as to the amount and kind of coverages to be afforded, and upon which false, reckless and fraudulent statements and representations Plaintiffs did in fact rely, the Plaintiff, Harry Detrick, has been damaged." * * *

■ The trial court found that plaintiffs had failed to establish false, reckless or fraudulent statements as alleged. We agree and find nothing in the record before us to bring plaintiffs' case within well established rules.

VI. Plaintiffs have been seriously damaged. It is admitted that their recovery of damages has been inadequate. As we commented in Division I, supra, the situation is anomalous. Plaintiffs' counsel has been skillful and resourceful but we cannot make a contract and create a liability where none exists.

The trial court was right.

The case is

Affirmed.

All Justices concur.